(No. 19404.—

ELME ERB HEIDENWAY, Appellant, *vs.* GEORGE F. HARDING, County Treasurer, *et al.* Appellees.

*Opinion filed October 19, 1929—Rehearing denied Dec. 5, 1929.*

JOHN W. ELLIS, and WILLIAM F. STRUCKMANN, for appellant.

JOHN A. SWANSON, State's Attorney, and LOUIS H. GEIMAN, (GEORGE LENNON, ROY MASSENA, CHARLES C. CARNAHAN, ISAIAH T. GREENACRE, and HAYDEN N. BELL, of counsel,) for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, Elme Erb Heidenway, filed her verified bill in the circuit court of Cook county against appellees, the county treasurer, the county clerk, the board of review, the board of assessors, the State Tax Commission and the president of the board of county commissioners, in which she set up the various steps taken by the assessing bodies in making the quadrennial assessment of real property in Cook county in 1927. It alleged that the work was completed in January, 1928, and warrants were delivered to the collectors for the same; that in June, 1928, at a special session of the legislature, two bills were passed and approved amending the law with reference to the re-assessment of property; that afterwards complaint was made to the tax commission of inequality in the assessment of real property in Cook county; that on July 10, 1928, at Chicago, the tax commission ordered a re-assessment of all real estate in Cook county; that the board of assessors and board of review are making the re-assessment as ordered; that in so doing they are incurring large expense, estimated in excess of $500,000; that the two statutes authorizing such re-assessment are unconstitutional for various reasons alleged in the bill. The prayer was for an injunction restraining the assessing officers from incurring any expenses for the re-assessment and restraining the disbursing officers of the county from paying any of the funds for such pur-

pose. Various demurrers, general and special, were filed. Some of appellees demurred to part of the bill and answered the rest of it. On November 10, 1928, the tax commission filed a document called a cross-bill *puis darrein continuance,* in which were set up certain proceedings of the tax commission on September 25, 1928, at Springfield, re-ordering the assessment to be made. All demurrers were overruled, the answers as amended were ordered to stand as answers to the bill as amended, replications were filed, the case came on for a final hearing before the chancellor upon the issues formed by the pleadings, the bill was dismissed for want of equity, and this appeal was prosecuted.

It is insisted by appellant that the two statutes of 1928 are unconstitutional because they authorize the taking of private property without due process of law; that there is no provision fixing the time and place for the meeting of the tax commission and no provision for notice before it sets aside individual assessments in any tax district, either in whole or in part; that the statutes do not require the board of assessors to give notice to any tax-payer before making a re-assessment; that the assessment made in 1927 by the board of assessors and board of review, in which no changes were made by the tax commission, became final for the 1927 quadrennial period, and it could not be set aside without prior notice to the tax-payers.

The first act (Laws of 1928, p. 106,) is entitled, "An act to amend section 9 of 'An act for the assessment of property and providing the means therefor, and to repeal a certain act therein named,' approved February 25, 1898, as amended." This section as amended is identical with section 9 of chapter 120, (Smith's Stat. 1927, p. 2301,) which provides for the assessment of real property in 1899 and quadrennially thereafter, except that in addition to the quadrennial assessment the amendment provides that in any year the tax commission may order a re-assessment, which shall be the assessment during the remainder of the quadrennial period.

The second act (Laws of 1928, p. 107,) is entitled, "An act to amend section 12 of 'An act in relation to the assessment of property for taxation,' approved June 19, 1919." Section 12 as amended is as follows:

"Sec. 12. Whenever it shall appear to the tax commission that the real or personal property in any county, or in any assessment district thereof, has not been assessed in substantial compliance with law, or has been unequally or improperly assessed, the tax commission may, in its discretion, in any year, whether after or before the original assessment is completed by the local assessment officers, order a re-assessment for such year of all or any class of the taxable property in such county, or assessment district thereof; and such re-assessment shall be substituted for the original assessment. The tax commission may order such re-assessment made by the local assessment officers. The order directing such re-assessment shall be filed in the office of the county treasurer of the county in which such re-assessment has been ordered, except in counties having an elective board of review in which case such order shall be filed with the board of review. If any general or quadrennial assessment of real property shall not be published in any year for which such assessment was made, or if such publication was not made in time to permit the examination thereof by the tax commission in such year, then the tax commission may in any of the three years intervening between the years for which general quadrennial assessments are made order such re-assessment of such then last general quadrennial assessment of all or any class of real property in such county or assessment district, and such re-assessment shall be substituted for such original general quadrennial assessment for such intervening year and thereafter until the next general quadrennial assessment is made. No substitute assessment shall invalidate any prior assessment as to taxes based thereon which may be legally in course of collection by collection officers at the time such order for re-assessment is made. The tax commission may order at any time and from time to time the board of re-

view of any county not having an elective board of assessors and an elective board of review to convene in extraordinary session for the purpose of further revising, correcting and equalizing the assessment of property within such county or any assessment district thereof. The compensation and other expenses of the county board of review when convened in such extraordinary session shall be paid by the county on the certificate of the tax commission as provided in section 17 of the act containing the section hereby amended."

The order entered by the tax commission after the passage of these statutes recites that gross inequality exists in the 1927 assessment in Cook county between the individual assessments of real property, between the assessments on real property within the several taxing districts and between different classes of real property in the county, and that there has never been published a full and complete list of the assessment of real property nor has any such publication been made at any time during the last twenty-eight years; that the assessment made in 1927, unless a re-assessment is made, will stand during the full quadrennial period, and that because of such inequality and non-publication a re-assessment is both desirable and necessary. It was ordered that the local assessing officers proceed to re-assess all real property of the county and that the assessment made be substituted for the original assessment until the next general quadrennial assessment is made.

Every tax-payer, under the constitution and laws of this State, has a right to notice when his property is assessed for taxation, with an opportunity to be heard upon the justness of the taxation. To this end statutory provisions are made for such notice and hearing. These provisions are for the protection of the tax-payer, they are mandatory, they must be strictly complied with, and a disregard of them will render the tax illegal. (*People* v. *Nokomis Coal Co.* 308 Ill. 45; *People* v. *Abraham,* 295 id. 582; *People* v. *Toledo, St. Louis and Western Railroad Co.* 266 id. 112.) Where the statute fixes the time and place of the meeting

of the assessors who are to make the original or initial assessment and the time and place of the meeting of the board authorized to equalize the original or initial assessment no further notice need be given. The statute is held to be sufficient notice to meet the constitutional requirement of due process of law. (*People* v. *Orvis*, 301 Ill. 350; *People* v. *Casey*, 286 id. 89; *People* v. *St. Louis Bridge Co.* 281 id. 462; *Carney* v. *People*, 210 id. 434.) Where the assessor who is authorized to make the original or initial assessment has acted, neither he nor the reviewing board can change the assessment without notice and an opportunity to the tax-payer to be heard. (*People* v. *Shirk*, 252 Ill. 95; *People* v. *National Box Co.* 248 id. 141.) The statutes with reference to such notice and opportunity to be heard generally provide that the notice and hearing shall be before the assessment is changed.

Section 12 of the act of 1919, (Smith's Stat. 1927, p. 2319,) which was amended by the 1928 statute, provided for the re-assessment of property along the general lines provided in the amendment now before us. Section 14 of that act provides that "for the purpose of reviewing and equalizing such re-assessment, the board of review of the county in which the re-assessment is made shall review and correct such re-assessment. The tax commission shall fix the time and place of the meeting of the board of review to review and correct such re-assessment. At least one week before the meeting of such board of review to review and correct such re-assessment, the board of review shall publish a notice of the time and place of its meeting for such purpose in at least one newspaper of general circulation published in the county in which such re-assessment is made. The board of review shall convene at the time and place fixed in such order and shall review, correct, return and certify such re-assessment in like manner, and shall have and exercise all the powers and authority given to boards of review and shall be subject to all the restrictions, duties and penalties of such boards." Section 14 was passed for the express purpose of giving notice and

an opportunity for a hearing to tax-payers under the act of 1919, which provided for re-assessment of property. Section 14 remained in full force and effect after the amendments of 1928, and it affords the property owner an opportunity to object to the re-assessment after it is made and gives him the opportunity to a hearing thereon.

Appellant insists, however, that this is a re-assessment as distinguished from an original assessment; that it contemplates a review of individual assessments made for the 1927 quadrennial period, and that such re-assessment can not be made under the constitution without prior notice to tax-payers and an opportunity to be heard before changes are made. It is true that the assessments of real estate belonging to individuals will be changed in the re-assessment, but the purpose of the statute of 1928, and of the order entered thereunder, was not to make changes in the assessments of individuals, but the purpose was to correct inequalities and failures to comply with the law in assessments in the entire county. While it is called a re-assessment, it is, in fact and in effect, a new or original assessment of all of the real property of the county, and is governed by the rules of law applicable to original assessments. The legislature had a right to make provision for the correction of inequalities in assessments and failures to comply with the law, such as the pleadings show in this case. In populous counties like Cook it would be practically impossible to give individual notices prior to the re-assessments or to have individual hearings prior thereto. The order of the tax commission directs the various assessing officers to re-assess the real property. Section 14 of the statute provides for the reviewing and correction of the re-assessment by the board of review and that notice shall be given thereof so that the tax-payer will have notice, with an opportunity to be heard. Due process of law simply requires that the property owner be given notice and an opportunity to be heard, and section 14 complies with the tests generally laid down by the courts.

It is insisted by appellant that the statutes are unconstitutional because they authorize re-assessments which do not comply with the rules of uniformity and equality required by article 9 of the constitution; that they authorize the tax commission to order a re-assessment between quadrennial years, and they are unconstitutional because the assessments are authorized on April 1 of the year in which the re-assessment is made instead of on April 1 of the first year of the quadrennial period. The constitution does not require that property be assessed on any particular day or on the same day. The statute provides that all property shall be assessed as of the first day of April in each year. It provides for a general assessment as of the first day of April in the first year of the quadrennial period, which shall stand for four years unless changed by the assessors or board of review. In *Crozer* v. *People,* 206 Ill. 464, this court considered the question of the assessment of property on different days and held contrary to the present contention of appellant.

It is insisted that the statutes are unconstitutional because they delegate legislative and judicial power to taxing officers, in violation of article 3 of the constitution. This contention is based upon that part of section 12 which provides that where it appears to the tax commission that any assessment has not been made as provided by law, or is unequal, the commission may, in its discretion, order a re-assessment. It is insisted that the commission is vested with judicial discretion to order or not to order the re-assessment; that the legislature may by law provide that when a certain state of facts exists a re-assessment shall be ordered, but it cannot provide that when that state of facts exists the re-assessment may or may not be ordered, at the pleasure of the tax commission. It is also claimed that power is conferred upon the tax commission to determine whether the assessment has been made according to law; that this means that the tax commission may determine whether the assessment shall be held illegal for the remain-

ing years of the quadrennial period, and this may be done at any time, without notice and without a hearing.

Section 1 of article 9 of the constitution provides that the value of property for the purposes of taxation shall be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise. This vests in the legislature power and control over the assessment of taxes except as limited by the constitution or by inherent limitations restricting the power to public purposes. Courts have no power to fix the valuation of property for the purpose of taxation. (*People* v. *Herald Publishing House,* 323 Ill. 574; *Burton Stock Car Co.* v. *Traeger,* 187 id. 9.) Every official act and function involved in the entire process of making a valuation for assessment purposes must be performed by some person or persons elected or appointed in the manner provided by the General Assembly. In the performance of their duties in making assessments officers are required to exercise discretion and judgment, which must be vested in them in order that they may perform their duties. The fact that they are vested with discretion and judgment does not make them either legislative or judicial officers. In *People* v. *Orvis, supra,* it was held that boards of assessors, boards of review and boards of equalization, though acting judicially in the performance of the duties of their office, are not courts and do not exercise judicial powers in the performance of their duties. It has not been held in any case to which our attention has been called that the conferring of such powers is in violation of the provisions of the constitution.

We find no reversible error, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*