(No. 47353.—

PAUL E. HAMER *et al.,* Appellees, v. ROBERT J. LEHNHAUSEN, Director of the Department of Local Government Affairs, *et al.*—(Frank A. Kirk, Successor in Office, Appellant.)

*Opinion filed April 16, 1975.*

SCHAEFER and DAVIS, JJ., took no part.
KLUCZYNSKI, J., dissenting.

William J. Scott, Attorney General, of Springfield (Herbert L. Caplan, Assistant Attorney General, of counsel), for appellant.

Paul E. Hamer, of Northbrook, for appellees Paul E. Hamer *et al.*

Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Frederic S. Lane and Jack Richter, of counsel), for appellee Township High School District No. 113.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago (Richard F. Babcock, R. Marlin Smith, Julian D'Esposito and Jeffrey Ladd, of counsel), for *amici curiae* Board of Education of Evanston Township High School, District 202, and Board of Education of New Trier Township High School, District 203.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

This is another in a succession of cases resulting from the failure of public officials, both State and local, to assess and equalize property for taxing purposes in the manner prescribed by law. *E.g., People ex rel. Hamer v. Jones* (1968), 39 Ill.2d 360; *Hamer v. Mahin* (1970), 47 Ill.2d 252; *Harte v. Lehnhausen* (1975), No. 46533, filed May 19, 1975; *People ex rel. Musso v. Chicago, Burlington & Quincy R.R. Co.* (1965), 33 Ill.2d 88, and cases there cited.

Pursuant to our Rule 302(b) (50 Ill.2d R. 302(b)) we transferred here this appeal from an order of the circuit court of Lake County enjoining the Department of Local Government Affairs of this State and its director from certifying, without prior court approval, a final 1974 "multiplier" for any county in the State which would result in a level of property assessment after equalization of less than 42% of full value.

Illinois' system of taxing real and personal property is established by the Revenue Act of 1939 as amended. (Ill. Rev. Stat. 1973, ch. 120, pars. 501–811.) It provides for valuation of both types of property for purposes of taxation at "fair cash value" (pars. 501, 502), defined,

except in counties with a population of more than 200,000 which classify real property for purposes of taxation, as 50% of actual value. (Par. 482(24).) Local boards are required to equalize intracounty assessments by local assessing officials among townships or assessment districts, or as between differing types of property. (Par. 589.1.) In order to insure the constitutionally required uniformity (Ill. Const. (1970), art. IX, sec. 4(a)), the State Department of Local Government Affairs is directed by statute to act as an equalizing authority to lower or raise the total assessed value of property in the several counties as certified to it by the county clerks, so that in counties throughout the State property will be assessed at the 50% level specified by law. (Par. 627.) The Act provides that the amount to be added to or deducted from the aggregate value of property as locally assessed is to be determined by the Department "[b]y means of a comparison of assessed valuations, as revised by boards of review or boards of appeals, as the case may be, and estimated full, fair cash values established through the analysis of property transfers, property appraisals, and such other means as it deems proper and reasonable ***." (Par. 627.) Notice of the Department's action is to be given by publication of the Department's estimates of full, fair cash value of locally assessed property within each county, and for a public hearing following which the Department may either confirm or revise its estimate. (Par. 629(a).) Thereafter, the Department is directed to equalize assessments of all property among the several counties as certified by the county clerks "by adding to the aggregate assessed value thereof in every county in which the Department may find the valuation to be less than full, fair cash value, such rate per cent as will raise the same to its full, fair cash value *** and by deducting from the aggregate assessed value thereof, in every county or township in which the Department may find the valuation to be more than the full, fair cash value, such rate per cent as will reduce the

same to its full, fair cash value." (Par. 630.) This equalization rate, which is more commonly referred to as the "multiplier," is then certified by the Department to the respective county clerks who extend taxes on the basis of the equalized assessed valuation resulting from application of the multiplier. Par. 632.

Despite this statutory program designed to produce uniformity in assessed valuations, no real effort has been made by State or local officials to assess all property at its fair cash value as required by statute. There are disparities in the values which local assessors place on different types of real property within the same township or assessment district. There are also disparities in the valuations of similar property in separate townships or assessment districts. That this situation exists in Lake County is demonstrated by the record in this case. That it is duplicated in varying degrees in other counties throughout this State is a matter of common knowledge of which we may take judicial notice. As earlier noted, our legislature recognized the problem and sought to remedy it by requiring Boards of Review in the counties to equalize assessments as between various types of property, or as between the several townships or assessing districts. Boards of Review have, in large measure, ignored that requirement. Substantial disparities, documented by the record in this case, exist in the levels of assessed valuations as between the various counties. The Department of Local Government Affairs, charged by the legislature with the duty of equalizing those valuations at 50% of actual value has, as is apparent from this record, deliberately chosen not to do so. The net results of this are intracounty and intercounty disparities in assessed valuations which are neither fair to individual taxpayers nor in accordance with law.

Proceedings related to this case have been pending in the Illinois courts for the past decade. In 1965 Paul E. Hamer and June T. Hamer, his wife, brought a taxpayer's

suit seeking to compel local and State officials to perform their statutory duty to equalize and assess all taxable property at full, fair cash value. The trial court dismissed the complaint. In *People ex rel. Hamer v. Jones* (1968), 39 Ill.2d 360, we affirmed on the grounds that to grant the principal relief sought in the context of that case would create extreme expense, disorder, confusion and great hardship for taxpayers. We also noted that there was a likelihood of legislative action which militated against judicial change. However, we there indicated that while this court would defer to legislative action for a time, we could not indefinitely abdicate our responsibility to enforce the law. Shortly after that decision the same plaintiffs filed this suit, again seeking declaratory relief, injunction and relief by way of *mandamus* with respect to the asserted failure of the Director of Revenue (then charged with the duties now exercised by the Department) to equalize and assess all taxable property as provided by law. Two appeals preceded the one now before us. In *Hamer v. Mahin* (1970), 47 Ill.2d 252, we reversed a judgment of the circuit court of Lake County dismissing the complaint and remanded the cause for further proceedings in accordance with law. On remand, the circuit court granted summary judgment for the defendants, and on appeal, the appellate court in *Hamer v. Mahin* (1973), 13 Ill. App. 3d 51, reversed and remanded for additional proceedings.

Plaintiffs thereafter supplemented their earlier pleadings by the filing of supplemental complaints seeking declaratory and injunctive relief for the then current tax years as to assessment and equalization of property within Lake County as well as statewide between the counties. The second supplemental complaint filed on April 4, 1974, also asked for a temporary order restraining and enjoining the Director of the Department of Local Government Affairs from certifying the multiplier for Lake County for the 1973 tax year during the pendency of the suit. That

relief was denied by the trial court on the basis of representations by the Department that it would not certify any 1973 multipliers until a hearing had been held. However, due to what the trial court termed a "misunderstanding," the Department proceeded to certify final 1973 multipliers for most of the counties in the State prior to the hearing on the various pending issues pertaining to the 1973 tax year. During the course of that hearing in June, 1974, there was evidence that equalized assessed valuations for the various counties for 1973 would range from a high of 53.23% in Du Page County to a low of 36.01% in Effingham County. Notwithstanding the obvious lack of uniformity in intercounty levels of assessment after equalization, the trial court determined that it was too late to take any judicial action to correct the problem for the 1973 tax year. Instead, the court announced that it would retain jurisdiction in an attempt to prevent a recurrence as to 1974 taxes. In pursuance of this objective, the court, on June 13, 1974, ordered the Director of the Department of Local Government Affairs to present to it a course of action designed to eliminate intercounty disparities for the ensuing 1974 tax year.

On August 1 the court entered an order directing the Department to utilize sales ratio studies for 1970, 1971, and 1972 in determining the 1974 equalization of assessments among the counties. The record does not indicate any further developments until December 12, 1974, when the Director issued a press release stating that each county in Illinois could expect to be assigned the same multiplier for the 1974 tax year as it had received for the 1973 tax year, unless a particular county experienced wide variations in assessment levels from the previous year.

In response to the Director's press release, plaintiff taxpayers on December 23, 1974, filed a petition for a rule to show cause why the Director should not be held in contempt of court for failure to comply with applicable law and the prior orders of the trial court directing that

the Department pursue a program to achieve uniformity in equalization of assessments for the 1974 tax year. A hearing was held on January 14, 1975, at which the Director apparently indicated that notwithstanding his December 12 press release he would comply with the law in the equalization of all property subject to taxation in the State for the 1974 tax year. However, to prevent a recurrence of the "misunderstanding" which led to certification of final multipliers by the Department for most of the counties in the State prior to final hearing of the matter for the 1973 tax year, the court entered the order appealed from enjoining the Director and the Department "from certifying any final equalization factor for any County in the State of Illinois where the application of such a factor will result in a level of assessment, after the equalization of all locally assessed property, of less than 42% of the actual value of such property in such County as adjusted pursuant to the sales ratio studies of the Department of Local Government Affairs for the tax years 1970, 1971, and 1972, unless prior approval of this Court shall be obtained after due notice to all parties hereto." In explaining the 42% level set forth in the order, the court stated: "It was substantially a compromise by myself between the 36 and 50 level of assessment that was certified to me last year, that was the lowest level in the State and the 50 level, which the Department was required to follow. It was in accordance with my equitable jurisdiction and an effort to avoid a substantial and unfortunate discrepancy between taxpayers within the State." The court set January 29 and February 11 deadlines for the Director to file specified reports.

Prior to February 7, the Department filed with the court a report showing the 3-year weighted average median assessment levels prior to equalization in all counties except Cook based on 1970, 1971, and 1972 sales ratio studies as adjusted through 1974 Supervisor of Assessments changes. This report showed a wide variation of

assessment levels before equalization in counties throughout the State ranging from 5.78% in Johnson County to 50.32% in Wabash County. The Department also submitted to the court its "control sheet" showing tentative 1974 multipliers which had been certified to all but 10 counties between December 16, 1974, and January 30, 1975. When read together, these reports clearly indicated that the levels of assessment among the counties after application of the 1974 tentative multipliers would result in even greater intercounty disparities than had existed for the 1973 tax year. As to the 92 counties for which such calculations could be made, the equalized assessed valuations would range from 25.13% to 50.32%. An example of the lack of uniformity reflected in the tentative multipliers was the fact that the level of assessment before equalization in the 31 counties receiving the same tentative multiplier of 1.00 varied from 35.43% to 50.32%.

On February 7, the Department filed a motion to dissolve the injunction entered January 17. In explaining its denial of the Department's motion, the court stated: "It was my understanding over a year ago from the Department, that substantially, we would proceed in this direction without the necessity of further court orders, based on the evidence, affidavits and pleadings and admissions which had been made as far as this record is concerned. It was in December, 1974, when the assessments were in fact certified out on a tentative basis and the tentative basis indicated that the Director, far from trying to move in the direction of equalization, which he had talked about over a year ago, was apparently in fact going to certify a series of multipliers which would not only go against equalizing the tax burden but would create an ever greater inequity in the level of assessment in the State of Illinois than existed in the past."

The Department filed notice of interlocutory appeal, and notices of cross-interlocutory appeal were filed by the plaintiff taxpayers and by Township High School District

No. 113, which had been allowed to intervene as a plaintiff on its own behalf and on behalf of 21 other school districts in Lake County as to matters concerning the 1974 tax year. In both instances the cross-appellants objected to that portion of the injunction order setting the level of assessment at not less than 42%, their position being that the matter should be remanded to the circuit court with instructions to set the level at 50% of actual value as required by statute. On February 26, this court entered an order allowing the Department's petition to appeal directly to this court pursuant to Rule 302(b) and granting the Department's motion for a stay of enforcement of the January 17 injunction order pending this appeal. During oral argument before this court on March 17, counsel indicated that following the date of the stay order the Department had proceeded to certify final 1974 multipliers to the county clerks of 65 counties and that taxes were in the process of being extended in those counties.

In view of the conclusion we reach it is necessary to consider first the Department's argument that the circuit court of Lake County is not a proper forum for a resolution of the questions presented in this case since: (1) there had been a failure to join all necessary parties; (2) due notice and opportunity to be heard has not been given to the affected taxpayers and taxing bodies; and (3) the court does not have extraterritorial jurisdiction to affect property and taxpayers located in 101 other counties. The authorities cited by the Department are not in point, and we find these contentions to be without merit. The case involves the question of whether a State official has performed those duties required of him by the Revenue Act. We do not agree that representatives from all counties are necessary parties, but the circuit court of Lake County should permit any county so requesting to intervene as to further proceedings. Nor do we agree with the related contention that they must first be given notice and an opportunity to be heard. The circuit court of Lake County

now has jurisdiction of the only parties necessary to a determination of the issues.

It is clear that the legislature did not intend the Department of Local Government Affairs to have discretion as to whether to act as an equalizing authority. Instead, it stated the Department "shall" perform that function and "shall equalize the assessments between counties as in this Act provided." (Ill. Rev. Stat. 1973, ch. 120, par. 627.) The mandatory duty of the Department in this respect is well settled. (*People ex rel. Ruchty v. Saad* (1952), 411 Ill. 390.) The failure of both local officials and the Department to perform their duties has not only eliminated any possibility of uniformity of taxation, but has also disrupted the statutory scheme for distribution of various types of State aid apportioned on the basis of equalized assessed valuations. Examples of the latter are the provisions for distribution of State school aid appearing in section 18—8 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 18—8) and section 12—21.13 of the Public Aid Code, which authorizes State payments to supplement local funds for public aid if the local governmental unit levies taxes for such purposes equivalent to a specified percentage of the equalized value of all its taxable property. Ill. Rev. Stat. 1973, ch. 23, par. 12—21.13.

We come, then, to the difficult question of a suitable remedy. The choice, in our judgment, lies between compelling the Department to recall the 1974 multipliers previously certified and to recompute them on a basis which would produce a uniform level of equalized assessed valuation for all counties at 50% of actual value, and abandoning efforts to correct 1974 valuations in favor of accomplishing that result as to the 1975 taxes, payable in 1976. Pursuing the first of these alternatives would result in doubling the equalized assessed valuations of property in the county with the lowest ratio of assessed values to actual values and proportional increases in other counties.

That result does not, contrary to the Department's argument, necessarily result in higher taxes. Increases in assessed valuations result in a taxpayer paying more tax dollars only if the taxing bodies increase their levies; the single exception is the taxing body which has levied more than its maximum rate will produce. Since levies have already been certified for 1974 by all taxing bodies, increased taxes could result only in those few instances where the full amount previously levied could not, because of maximum rate limitations, be extended against the previously existing equalized assessed valuations. Nor do increases in equalized assessed valuations necessarily mean payment by taxpayers of more tax dollars in future years. That result would occur only if taxing bodies increased their tax levies, and local taxpayers can control that action.

The real deterrent to compelling compliance by the Department with the statutory requirements is the delay which that course of action necessarily involves. County clerks have now been computing tax extensions for some time. To require the Department to recompute and recertify multipliers at this late date would nullify the progress heretofore made by the county clerks in the tax-extension process and require them to await recertification by the Department of a new multiplier before recommencing the tax-extension work. Substantial delay in the collection of taxes would inevitably result, necessitating the borrowing of funds by many taxing bodies in order to meet current operating expenses. The costs of such borrowing will ultimately reduce the funds available to the taxing bodies, thereby curtailing to some extent their normal operations.

Given these alternatives, we feel compelled to once again defer action. We assume, however, that the plaintiffs will not abandon their efforts to obtain judicial relief as to the 1975 and subsequent tax years. It is appropriate, therefore, that the circuit court of Lake County retain

jurisdiction for such further proceedings as may be instituted to insure that the Department performs its statutory duties. It should be evident from the views expressed earlier in this opinion that the persistent disregard of the law apparent in these proceedings will not be permitted to continue.

Accordingly, the interlocutory order entered January 17, 1975, by the circuit court of Lake County is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded, with directions.*

SCHAEFER and DAVIS, JJ., took no part in the consideration or decision of this case.

MR. JUSTICE KLUCZYNSKI, dissenting:

The majority opinion refers to *People ex rel. Hamer v. Jones* (1968), 39 Ill.2d 360, 372, and correctly notes that in that opinion this court stated "we cannot abdicate our responsibilities even though our approach must necessarily be a negative one and chaos may ensue." In effect, the majority result in this case is a clear abdication of judicial responsibility. I would adopt the first alternative suggested by the majority and require that the 1974 multipliers be recomputed so as to result in an equalized assessed valuation of 50% of actual value, as required by law.

As succinctly noted by the majority opinion, the statutory procedure designed to equalize uniformity in assessed property valuation has been blatantly disregarded for many years by local and State officials. In an effort to curb this official disdain for the statutory mandate, plaintiffs have persevered for a decade throughout the courts of this State. Again they are frustrated by this court's refusal to presently afford them relief for the reason that the resulting delay in the tax collection process may create financial difficulties presumably necessitating the issuance of tax anticipation warrants.

This reasoning is prevalent in each taxing year. There is no presently ascertainable basis from which to conclude that a comparable chronological sequence of events causing delay may not arise in succeeding years. In this case plaintiffs acted as promptly as possible when they had knowledge of the illegal action concerning the tax multipliers for the 1974 taxing year. The use of the invalid multipliers was attributed to a "misunderstanding." The trial court then sought to partially offset the illegal multipliers by ordering that the equalized assessed valuation shall be no less than 42% of full value. Such valuation should have been set at 50%.

The majority opinion may be construed by some as implying that this court was, in part, responsible for creating the delay when we stayed enforcement of the trial court's order, thereby permitting the Department to certify the 1974 multipliers for a substantial majority of this State's counties. This is not so. The trial court's order was facially invalid in that it required the equalized assessments to be no less than 42%. The past performance of some officials entrusted with the assessment and equalization of property values clearly indicates that no recomputation would have occurred in counties where the equalized assessed valuation was previously at least 42% but less than 50%. The counties which had an equalized assessed valuation of less than 42% would no doubt have received multipliers which would have rendered their equalized assessed valuations at less than 50%. In both instances recomputation of the multipliers would have been required to comply with the law. Thus this court's stay order did not in any conceivable manner prejudice those counties not in compliance with the pertinent provisions of the Revenue Act. The origin of any hardship resulting from the recomputation of the 1974 tax multipliers must be traced to the actions of those public officials who have continually refused to follow their statutory obligations.

The majority urges plaintiffs to maintain their efforts

in the trial court where the substantial likelihood exists that similar dilatory tactics may occur. There is no reason why this burden must be borne by plaintiffs after a decade of litigation. I would compel compliance with the law for the 1974 taxing year and succeeding years unless valid legislative action would warrant otherwise.