(No. 48482.-

PAUL E. HAMER *et al.*, Appellants, v. FRANK A. KIRK, Director of the Department of Local Government Affairs, *et al.*, Appellees.

*Opinion filed November 15, 1976.*

Paul E. Hamer, of Northbrook, for appellants.

William J. Scott, Attorney General, of Chicago (Robert G. Epsteen and Paul J. Bargiel, Assistant Attorneys General, of counsel), for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiffs Paul and June Hamer brought this action in the circuit court of Lake County as taxpayers against the Director of the Department of Local Government Affairs (hereafter Department) praying that the court declare unconstitutional section 146 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 627) as amended by Public Act 79–703 (Laws of 1975, at 2192), and enjoin the Department from issuing regulations based on that section. The trial court held the statute constitutional and denied injunctive relief. Plaintiffs filed an interlocutory appeal pursuant to Rule 307(a)(1) (58 Ill. 2d R. 307(a)(1)), and we allowed their motion to transfer the appeal here pursuant to Rule 302(b) (58 Ill. 2d R. 302(b)).

This is another in the series of cases in which plaintiffs have sought to compel State and local officials to assess and equalize property for taxing purposes in the manner prescribed by law. (See *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400; *Hamer v. Mahin* (1970), 47 Ill. 2d 252; *People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360.) In *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400, 401-03, we described in detail the system of taxing property that existed prior to the amendment challenged here:

"Illinois' system of taxing real and personal property is established by the Revenue Act of 1939 as amended. (Ill. Rev. Stat. 1973, ch. 120, pars. 501–811.) It provides for valuation of both types of property for purposes of taxation at 'fair cash value' (pars. 501, 502), defined, except in counties with a population of more than 200,000 which classify real property for purposes of taxation, as 50% of actual value. (Par. 482(24).) Local boards are required to equalize intracounty assessments by local assessing officials among townships or assessment districts, or as between differing types of property. (Par. 589.1.) In order to insure the constitutionally required uniformity (Ill. Const. (1970), art. IX, sec. 4(a)), the State Department of Local Government Affairs is directed by statute to act as an equalizing authority to lower or raise the total assessed value of property in the several counties as certified to it by the county clerks, so that in counties throughout the State property will be assessed at the 50% level specified by law. (Par. 627.) The Act provides that the amount to be added to or deducted from the aggregate value of property as locally assessed is to be determined by the Department '[b]y means of a comparison of assessed valuations, as revised by boards of review or boards of appeals, as the case may be, and

estimated full, fair cash values established through the analysis of property transfers, property appraisals, and such other means as it deems proper and reasonable ***.' (Par. 627.) Notice of the Department's action is to be given by publication of the Department's estimates of full, fair cash value of locally assessed property within each county, and for a public hearing following which the Department may either confirm or revise its estimate. (Par. 629(a).) Thereafter, the Department is directed to equalize assessments of all property among the several counties as certified by the county clerks 'by adding to the aggregate assessed value thereof in every county in which the Department may find the valuation to be less than full, fair cash value, such rate per cent as will raise the same to its full, fair cash value *** and by deducting from the aggregate assessed value thereof, in every county or township in which the Department may find the valuation to be more than the full, fair cash value, such rate per cent as will reduce the same to its full, fair cash value.' (Par. 630.) This equalization rate, which is more commonly referred to as the 'multiplier,' is then certified by the Department to the respective county clerks who extend taxes on the basis of the equalized assessed valuation resulting from application of the multiplier. Par. 632."

With the enactment of Public Act 79—703, real and personal property are now to be assessed at 33 1/3%, rather than 50%, of actual value "as determined by the Department's assessment to sales ratio studies for the 3 most recent years preceding the assessment year, adjusted to take into account any changes in assessment levels implemented since the data for such studies were collected." (Ill. Rev. Stat. 1975, ch. 120, par. 482(24).) Plaintiffs do not argue that the General Assembly may not

require the assessment of property at 33 1/3% of actual value. They do argue, however, that the method the General Assembly has provided to reach uniformity at 33 1/3% is unconstitutional. That method is established in section 146 of the Revenue Act of 1939:

"The Department shall act as an equalizing authority. It shall examine the abstracts of property assessed for taxation in the several counties and assessment districts in counties having assessment districts as returned by the county clerks and shall equalize the assessments between counties as in this Act provided. Except as hereinafter provided the Department shall lower or raise the total assessed value of property in any county as returned by the county clerk so that such property will be assessed at 33 1/3% of its fair cash value.

By means of a comparison of assessed valuations, as revised by boards of review or boards of appeals, as the case may be, and estimated 33 1/3% of the fair cash values established through the analysis of property transfers, property appraisals, and such other means as it deems proper and reasonable, the Department shall annually ascertain and determine the percentage relationship, for each county of the State, between the valuations at which locally-assessed property is listed by assessors and revised by boards of review or boards of appeal, as the case may be, and the estimated 33 1/3% of the fair cash value of such property.

With the ratio so ascertained and determined for each county, the Department shall then ascertain the amount to be added to or deducted from the aggregate reviewed assessment on property subject to local assessment jurisdiction in order to produce a ratio of assessed to 33 1/3% of the fair cash value equivalent to 100%; Provided, (1) if the amount so ascertained for 1975 and 1976 results in a reduction of the aggregate reviewed assessment from the aggregate equalized assessed valuations for such county existing for the 1974 assessment year, the Department shall ascertain the amount to be added to or deducted from such aggregate reviewed assessment for 1975 and subsequent assessment years in order to produce an aggregate equalized assessed value equivalent to the aggregate equalized assessed value which existed for the 1974 assessment year, except that additions, deletions,

depletions and assessment of omitted property in 1975 and succeeding assessment years shall be excluded in making such computation; and

(2) If a county had a ratio of equalized assessed to fair cash value under 33 1/3% for the single assessment year of 1973, the Department shall allow a gradual transition period of 3 years to raise such ratio to 33 1/3% for 1975 and each of the following 2 years, the ratio of assessed to 33 1/3% of fair cash value used by the Department in ascertaining the amount to be added to or deducted from such aggregate reviewed assessment for 1975, and for each of the following 2 years, shall each year be increased in percentage points by 1/3 of the difference between 33 1/3% and the ratio for the assessment year of 1973. For the assessment year 1977 and subsequent assessment years the ratio of equalized assessed to full fair cash value in each county shall be in the ratio of 33 1/3% of fair cash value." Ill. Rev. Stat. 1975, ch. 120, par. 627.

Although the Department argues that plaintiffs lack standing to challenge the statute, we disagree. We note the question of standing was not raised or decided in the trial court in this specific phase of the ongoing litigation and should not ordinarily be considered for the first time here. (*People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 313.) We are satisfied, however, that plaintiffs are sufficiently aggrieved by the statute to have standing under the requirements of our past cases. (*E.g., Edelen v. Hogsett* (1969), 44 Ill. 2d 215, 219-20; *Schreiber v. County Board of School Trustees* (1964), 31 Ill. 2d 121, 125.) One harmful effect of nonuniform assessment of property results from the use of equalized assessed valuation in determining the eligibility of a local governmental unit to receive some types of State aid. (*E.g.,* Ill. Rev. Stat. 1975, ch. 122, par. 18—8 (School Code); ch. 23, par. 12—21.13 (Public Aid Code).) We recently made the following observation regarding State aid to schools, for example:

"Stated briefly, a school district which levies a sum for educational purposes at least equivalent

to a specified percentage of the value of all its taxable property as equalized or assessed by the Department of Local Government Affairs on the date of the levy is entitled to receive a grant from the common school fund in an amount which, when added to the amount of the levy at the specified minimum percentage, will produce the sum of $520 per pupil in average daily attendance. Accordingly, it is apparent that as a county's equalized assessed valuation becomes larger, the minimum amount which must be levied for educational purposes in order to qualify for State assistance must also increase, with the consequence that the amount received from the common school fund will be correspondingly smaller." *Harte v. Lehnhausen* (1975), 60 Ill. 2d 542, 544-45.

Plaintiffs allege without refutation that 41 counties in the State have lower assessment ratios than Lake County. As to residents of those counties, plaintiffs are aggrieved because they must pay proportionately more in local taxes to qualify for State assistance.

Plaintiffs first contend section 146, as amended, is unconstitutionally vague. Although we agree section 146 is scarcely a model of statutory draftsmanship, its intent and operation are discernible. Based on the assessment to sales ratio studies for the three most recent years preceding the assessment year, as required by section 1(24) (Ill. Rev. Stat. 1975, ch. 120, par. 482(24)), the Department is directed to ascertain for each county the amount by which the aggregate assessment must be increased or reduced so that aggregate assessed value is one third of actual value. Before multipliers that would accomplish this result are computed, however, the Department must make two additional determinations. Under proviso (1) of section 146, the Department may not, until the assessment year 1977, reduce the aggregate equalized assessment in a

county below its 1974 level, even though those values in some counties will thereby remain temporarily above the required 33 1/3% level. Under proviso (2), for counties in which the aggregate equalized assessed value was less than one third of actual value for the single assessment year 1973, a three-year transition period is established in which the Department must increase that ratio to 33 1/3% eliminating in three equal, annual steps the percentage difference between 33 1/3% and the ratio of equalized assessed valuation existing in 1973.

The more troublesome question is not what the statute provides but whether it may do so constitutionally. Without doubt the legislative scheme postpones the arrival of intercounty uniformity of assessment for taxing purposes until the assessment year 1977. And this court has been more than tolerant, considering the deliberate refusal of State and local officials to comply with the law, in recognizing that a sudden change in assessment policy could lead to chaotic conditions in tax collection procedures. The legislation under attack here appears designed to eliminate a part of the problems noted in our earlier opinions, and to promote compliance with article IX, section 4, of the Constitution with as little local disruption as possible. Viewed in this light, the three-year transition period established by Public Act 79—703 is not, in our judgment, so patently unreasonable that it must be struck down.

Plaintiffs raise an additional argument concerning the manner in which the Department conducts its assessment to sales ratio studies to determine whether counties are in compliance with the 33 1/3% requirement. The Constitution permits the classification of real property for purposes of taxation only in counties with a population of more than 200,000. (Ill. Const. 1970, art. IX, sec. 4(b).) In collecting data on real estate transfers, however, the Department divides the sales into urban and rural categories. Median assessment ratios are determined for each

category, usually disclosing that rural property, on the average, is assessed at a substantially lesser percentage of actual value than urban property. Information in each category is later combined to produce a single assessment ratio for the county. To attain the statutory level of 33 1/3%, the Department then imposes a single equalization rate (multiplier) for the county. The result in many counties is that recognized disparities between urban and rural assessment ratios are continued, and, where the multiplier increases the dollar valuation, amounts of those disparities, in terms of dollars, are magnified.

Urban property owners under this set of facts bear a constitutionally impermissible proportion of the burden of real estate taxes in those counties which do not classify property for purposes of taxation. (Ill. Const. 1970, art. IX, secs. 4(a), (b).) This violation of constitutionally required uniformity, however, originates with the local assessing authorities; it does not arise from the equalization procedures required by this amendment. Consequently, the validity of the legislation and procedures here challenged are not affected.

The problem of disparate urban-rural property assessment ratios, of course, should not exist. Local assessing authorities should assess at one third of actual value (Ill. Rev. Stat. 1975, ch. 120, par. 488); boards of review are directed by statute to correct improper assessments of property (Ill. Rev. Stat. 1975, ch. 120, pars. 589(4), (5)), and equalize property assessments within each county (Ill. Rev. Stat. 1975, ch. 120, par. 589.1); and the Department may order the reassessment in any county or assessment district of any property that has not been assessed in substantial compliance with law (Ill. Rev. Stat. 1975, ch. 120, pars. 612(6), 621).

The judgment of the circuit court of Lake County is affirmed.

*Judgment affirmed.*