PAUL E. HAMER *et al.*, Plaintiffs-Appellants, *v.* FRANK A. KIRK, Director of the Department of Local Government Affairs, *et al.*, Defendants-Appellees.

Second District   No. 76-303

Opinion filed February 15, 1978.

Paul E. Hamer, of Northbrook, for appellants.

William J. Scott, Attorney General, of Chicago, Jack Hoogasian, State's Attorney, of Waukegan, and Frederic S. Lane and Jack Richter, both of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Stephen R. Swofford, Assistant Attorney General, and William Blumthal, Assistant State's Attorney, of counsel), for appellees.

Mr. JUSTICE BOYLE delivered the opinion of the court:

The plaintiffs appeal from the dismissal of their complaint against the defendants, the Department of Local Government Affairs (hereinafter the Department) and the Lake County Board of Review (hereinafter the Board). Plaintiffs brought this amended action to compel the public officials responsible for the assessment and equalization of real property for purposes of taxation to comply with the Revenue Act of 1939 as amended (Ill. Rev. Stat. 1973, ch. 120, pars. 501-811). The trial court found that the applicable provisions of the Revenue Act, sections 220-22, 131, 140 and 323 (Ill. Rev. Stat. 1973, ch. 120, pars. 701-03, 612, 621, 804), did not apply to taxes lost due to the underassessment of a class or classes of property. In addition, the court refused to exercise its equitable power to order a retroactive reassessment for the 1967-73 tax years. The court further found that no adjustments in the 1974 assessed value of property were required because the court did not find a disparity between the classification of urban and rural property in Lake County for the 1973 tax year.

This appeal truly has a remarkable history and has resulted in decision, among others, in *People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 235 N.E.2d 589; *Hamer v. Mahin* (1970), 47 Ill. 2d 252, 265 N.E.2d 151; and *Hamer v. Mahin* (1973), 13 Ill. App. 3d 51, 299 N.E.2d 595. The plaintiffs present three issues for review in this court: (1) Whether the trial court erred in refusing to order a reassessment of those real properties which had been allegedly underassessed during the 1967-73 tax years; (2) Whether the trial court erred in refusing to order a reduction in the assessed value for the 1974 tax year based on alleged disparities during the 1973 tax year; and (3) Whether the trial court's ruling denies the plaintiffs due process of law, equal protection of the law, as well as their rights to a remedy. We find the plaintiffs' contentions to be without merit and we affirm the judgment of the circuit court of Lake County.

Prior to a discussion of these issues, however, it is important to note the following changes in the tax laws which have occurred since this action

was first instituted and which affect the tax years involved. The law applicable from the 1967-70 tax years required real property to be assessed at full, fair cash value, which at this time was 100 percent. (Ill. Rev. Stat. 1967, ch. 120, par. 629a.) This law was amended in 1971 to reduce the assessment level of all property from 100 percent to 50 percent. (Ill. Rev. Stat. 1971, ch. 120, par. 482(24).) This change affects the 1971-73 tax years at issue here; but in this opinion, the assessment level of 50 percent for the tax years 1971-73 will be used interchangeably with the assessment level of 100 percent for the 1967-70 tax years since it is not the percentage of assessed value in a given year which is at issue in this cause, but the remedies available to the plaintiffs for noncompliance with the statutory level of assessment.

The statutory system of taxing real and personal property under the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, pars. 501-811) pertinent here was succinctly set forth by our supreme court in *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400, 328 N.E.2d 11, in a suit to recall the 1974 multipliers which had been previously certified and to recompute it on a uniform level of equalized assessed valuation for all counties in the State at 50 percent of actual value. In *Lehnhausen* the court stated that the Revenue Act:

"* * * provides for valuation of both types of property for purposes of taxation at 'fair cash value' (pars. 501, 502), defined, except in counties with a population of more than 200,000 which classify real property for purposes of taxation, as 50% of actual value. (Par. 482(24).) Local boards are required to equalize intracounty assessments by local assessing officials among townships or assessment districts, or as between differing types of property. (Par. 589.1.) In order to insure the constitutionally required uniformity (Ill. Const. (1970), art. IX, sec. 4(a)), the State Department of Local Government Affairs is directed by statute to act as an equalizing authority to lower or raise the total assessed value of property in the several counties as certified to it by the county clerks, so that in counties throughout the State property will be assessed at the 50% level specified by law. (Par. 627.) The Act provides that the amount to be added to or deducted from the aggregate value of property as locally assessed is to be determined by the Department '[b]y means of a comparison of assessed valuations, as revised by boards of review or boards of appeals, as the case may be, and estimated full, fair cash values established through the analysis of property transfers, property appraisals, and such other means as it deems proper and reasonable * * *.' (Par. 627.) Notice of the Department's action is to be given by publication of the Department's estimates of full, fair cash value of

locally assessed property within each county, and for a public hearing following which the Department may either confirm or revise its estimate. (Par. 629(a).) Thereafter, the Department is directed to equalize assessments of all property among the several counties as certified by the county clerks 'by adding to the aggregate assessed value thereof in every county in which the Department may find the valuation to be less than full, fair cash value, such rate per cent as will raise the same to its full, fair cash value * * * and by deducting from the aggregate assessed value thereof, in every county or township in which the Department may find the valuation to be more than the full, fair cash value, such rate per cent as will reduce the same to its full, fair cash value.' (Par. 630.) This equalization rate, which is more commonly referred to as the 'multiplier,' is then certified by the Department to the respective county clerks who extend taxes on the basis of the equalized assessed valuation resulting from application of the multiplier. Par. 632." 60 Ill. 2d 400, 401-03, 328 N.E.2d 11, 12-13.

In the instant case, the trial court requested the plaintiffs to submit a proposal to bring all real property up to the 50 percent level for the 1973 tax year in order to remove the inequities between the various classes of property, because the latest statistical figures published by the Department showed disparities between the urban and rural properties in Lake County. The trial court also requested that the plaintiffs present a proposal to handle the back tax years where inequities between the various classes of property had existed. The trial court, however, rejected plaintiffs' proposal, which dealt only with Lake County, and requested a further statewide proposal.

The plaintiffs subsequently submitted a new proposal which provided for:

(1) A reassessment of all property in the State, except Cook County, for the 1973 tax year in order to bring all property up to 50 percent of full value as required by sections 131 and 140-45 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, pars. 612, 621-26).

(2) A sales-ratio study was to be conducted in selected counties to determine if commercial, agricultural and industrial properties were assessed at a lower percent of full value than residential properties for the 1967-72 tax years. Any disparities between these types of properties would require the Department to order a reassessment of those properties, and the difference between the original assessed values and the reassessed values would be treated as omitted property under sections 220-22 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, pars. 701-03).

(3) In the alternative, the plaintiffs proposed that if the disparities in the

assessments of different classes of property were shown by a sales-ratio study, then judgments would be entered against the local assessment officials for double the amount of the loss caused by the officials' failure to assess the property at its full cash value under section 323 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 804). The arrearage caused by this underassessment of the properties would be distributed to the various taxing bodies which would then be used to reduce the tax levies of those taxing bodies in subsequent years.

The plaintiffs, in addition, were permitted access to data compiled by the Department and county on the procedures used to equalize assessments among different classes of property in the county. This data, plaintiffs allege, clearly shows that there were disparities between the urban and rural categories and between townships within Lake County as well as showing that all property was not equalized at 50 percent as required by statute. The plaintiffs then filed a second supplemental complaint which sought to eliminate the disparities between urban and rural properties as well as the disparities between townships in Lake County for the 1973 tax year.

The trial court again requested that the plaintiffs submit a memorandum on a solution to the back tax years problems (*i.e.*, 1967-72). In their memorandum the plaintiffs suggested essentially the same relief as before, except that they asked the court to use its equitable powers to either order the Department to reassess the property or to order the Board to reassess the undervalued property in the exercise of its equitable powers. However, this further relief requested in the plaintiffs' memorandum was denied by the trial court, and the taxpayers appeal.

The plaintiffs contend first on appeal that the trial court erred in denying their request to order a reassessment of those real properties which had been allegedly underassessed in the 1967-73 tax years. The plaintiffs contend that the evidence amply demonstrates that there were obvious disparities for the years in question in contravention of the Illinois Constitution of 1970 (art. IX, §4(a)), which requires that taxes should be levied uniformly according to the valuation of real property, and the 1870 Constitution, which has also been interpreted to require uniformity in taxation. (*People's Gas Light & Coke Co. v. Stuckart* (1918), 286 Ill. 164, 173-74.) The plaintiffs contend that this record amply demonstrates that there was not uniformity in the assessments of urban and rural properties in Lake County for the years in question, and as a result, certain taxpayers were required to bear an unfair share of the tax burden for the tax years in question. We agree.

After a review of this record we find that the plaintiffs have established a disparity in the assessment and equalization of values in urban and rural property for the tax years 1967-73. Indeed, it would strain reason to find

otherwise. This problem of the assessment and equalization of taxable property in conformance with the statutory mandate has been duly recognized in detail by the courts for years in the following cases: *Mobile & Ohio R.R. Co. v. State Tax Com.* (1940), 374 Ill. 75, 76, 28 N.E.2d 100, 101; *Chicago, Burlington & Quincy R.R. Co. v. Department of Revenue* (1959), 17 Ill. 2d 376, 390-91, 161 N.E.2d 838, 847; *People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 235 N.E.2d 589; *Hamer v. Mahin* (1970), 47 Ill. 2d 252, 265 N.E.2d 151; *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400, 328 N.E.2d 11; *Hamer v. Kirk* (1976), 65 Ill. 2d 211, 357 N.E.2d 506. It would unduly prolong this opinion to set forth the paradoxes of this statutory requirement of uniformity which have eluded the public officials charged with its enforcement over the years. It is sufficient for this court to acknowledge that based on this record these same disparities in assessments between urban and rural properties in Lake County were present during the 1967-73 tax years. We turn now to an appropriate remedy.

The plaintiffs suggest many remedies but rely primarily on a statutory "omitted property" theory under section 222 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, par. 703), which provides that:

"If the tax or assessment on property liable to taxation is prevented from being collected for any year or years, by reason of any omission, erroneous proceeding or other cause, the amount of such tax or assessment which such property should have paid may be added to the tax on such property for any subsequent year, in separate columns designating the year or years."

Under the plaintiffs' theory, the underassessed rural or urban property would be reassessed by the public officials involved and the property value increased accordingly. The taxpayer would then pay a tax in subsequent years, in addition to his normal tax, for the back years to cover the difference in the taxes the taxpayer paid when his property was underassessed. Thus, the underassessed property would be treated just as if it were omitted property under the statute, and the plaintiffs would suggest that this extra money would be paid into the courts and distributed to the various taxing bodies in Lake County, based upon their pro rata share of the tax levy. The plaintiffs would then hope that the taxing bodies would use this windfall to reduce subsequent tax levies and relieve the tax burden on the previous overassessed taxpayers, whether urban or rural.

■■ The plaintiffs' theorem, although admirably unselfish in that it requests *no refund* for the overassessed taxpayers for the previous tax years, is an untenable solution to a recognized deficiency in our tax laws, which perhaps defies a cognizable judicial answer. The result of the

application of the omitted property theory as a remedy would have a chaotic effect on the public, the taxing bodies, and the public officials who are charged with calculating and collecting the taxes involved. For example, since the assessment and collection of taxes in Lake County during the tax years 1967-73, the property in question may have changed hands a dozen times or prior owners may have died and their estates would have long since been closed. The unexpected windfall for the taxing bodies involved would certainly be usurped by the bureaucratic abomination that most inevitably would follow such a reassessment.

We also determine that the omitted property theory asserted by the plaintiffs herein has been strictly limited in its application to those situations where the taxes have been *properly assessed* and levied against the taxpayers, but for some reason the taxing bodies have not collected the taxes. (*People ex rel. Siekmann v. Pennsylvania R.R. Co.* (1944), 385 Ill. 350; *Watson v. Village of Sibley* (1939), 372 Ill. 633.) Thus, section 222 (Ill. Rev. Stat. 1973, ch. 120, par. 703) does not permit the additional assessment of taxes on property improperly underassessed by the taxing authorities and on which the taxes have already been collected. In addition, our decision also recognizes the fundamental principle that taxes must have some degree of finality, stability, and security to the taxpayer. (*People ex rel. Greer v. Hunt* (1924), 311 Ill. 291, 293.) Otherwise the payment of taxes in one year would be ludicrous if the taxes for that year could be increased years later for incongruities in prior assessments of real property.

■■ Another remedy presented by the plaintiffs is that the Department be directed to order a reassessment of the underassessed properties for the years in question, pursuant to the provisions of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, pars. 612, 621-26). However, it is clear that the Department's authority to order a reassessment and to even review a new assessment is unequivocally governed by section 140 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, par. 621), which provides that:

> "Whenever it shall appear to the Department that the real or personal property in any county, or in any assessment district thereof, has not been assessed in substantial compliance with law, or has been unequally or improperly assessed, the Department may, in its discretion, in any year, whether after or before the original assessment is completed by the local assessment officers, order a reassessment for such year of all or any class of the taxable property in such county, or assessment district thereof; and such reassessment shall be substituted for the original assessment. * * * *No substitute assessment shall invalidate any prior assessment as to taxes extended thereon.*" (Emphasis added.)

Thus, it is apparent from the statute that the Department clearly had no power to order a reassessment for the tax years in question since the taxes had already been extended and collected.

■■   Our interpretation of this statute is also supported by an Attorney General's opinion (1972 Ill. Att'y Gen. Op. 21) wherein the Attorney General, when asked whether the Department had the power to order a reassessment for tax years in which taxes had been extended and collected, stated:

> "The foregoing statute (Ill. Rev. Stat. 1971, ch. 120, par. 621) clearly states that no substitute assessment shall invalidate any prior assessment as to taxes extended thereon. Since the taxes for the year 1970 and prior thereto have already been extended, I am of the opinion that the Department does not have the power to order a reassessment for the year 1970 and prior thereto." (1972 Ill. Att'y Gen. Op. 21, 23.)

In addition, our supreme court has also refrained from ordering the reassessment of taxes in a tax year where the assessment and equalization functions had been completed and the collection of taxes was in progress because of the great expense and hardship to the public as well as the confusion which would be caused by such a reassessment. (*People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 235 N.E.2d 589.) Likewise, our supreme court has also declined to order the Department to recompute and recertify the 1974 multipliers in view of the delay that course of action would precipitate, even where it was demonstrated that both the Department and other public officials had not properly performed their statutory duty and eliminated disparities in the assessments between counties. (*Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400, 328 N.E.2d 11.) Therefore we are compelled to find that statutorily the Department was prohibited from ordering a reassessment for the 1967-73 tax years wherein the taxes and assessments had already been extended and collected thereon.

The plaintiffs cite *Heidenway v. Harding* (1929), 336 Ill. 606, and *People ex rel. Town of Cicero v. Sweitzer* (1930), 339 Ill. 28, for the proposition that the trial court had authority to order a complete reassessment of underassessed properties after notice. These two cases, however, are clearly distinguishable because in both the reassessment was ordered by the State Tax Commission *prior to* the extension of taxes and *prior to* equalization. In the instant case, not only has the equalization factor been set, but the taxes have also been extended and collected for the years in question.

The plaintiffs also contend that this court should hold the public officials involved liable for the neglect of their duties in connection with the assessment and equalization process as permitted by sections 322 and

323 of the Revenue Act (Ill. Rev. Stat. 1973, ch. 120, pars. 803, 804). However, under the circumstances presented, it would be paramountly unfair to single out any public official for liability for what has been a complex problem over the last decade for the legislature, the enforcing bodies, and the judiciaries. As the supreme court aptly foresaw nearly a decade ago, "[t]he intricacies of [this] problem do not readily lend themselves to judicial solution." (*People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 372, 235 N.E.2d 589, 596.) Accordingly, the public officials involved here, who have not been shown to have willfully neglected their duty, are not liable for their efforts in trying to comply with the Revenue Act of 1939 as amended (Ill. Rev. Stat. 1973, ch. 120, pars. 803, 804).

Next, we must agree with the plaintiffs that the evidence clearly proves that there was a disparity between the classification of urban and rural property in Lake County during the 1973 tax year. An analysis of the intracounty equalization program in Lake County for the 1973 assessment year, prepared by the Department, clearly found "that the actions of the Supervisor of Assessments in 1973 did not produce uniform assessment level between Lake County townships." In addition, the Department specifically found "it cannot be said that a movement toward uniformity in assessment level was brought about by the actions of the Board of Review in 1973." The disparities set forth in the Department's report need not be set forth here because it would only complicate what has already been conclusively established here—that there were great differences between the assessment and equalization of urban and rural property in the 1973 tax year in Lake County. Thus, we agree with the plaintiffs that the evidence demonstrated that the burden of taxation was not uniformly distributed among urban and rural property owners in Lake County for the 1973 tax year due to disparities in the assessments and equalization of properties in the various townships. We note parenthetically that our supreme court in *Hoffman v. Clark* (1977), 69 Ill. 2d 402, 372 N.E.2d 74, has upheld the constitutionality of sections 20a—1 through 20a—3 of the Revenue Act of 1939 (Ill. Rev. Stat. 1973, ch. 120, pars. 501a—1 through 501a—3) which permit disparities in the assessments of real property used solely for agricultural or farming purposes until the property is put to a different use. At that time, additional taxes are assessed for the preceding three years against the owners of said property based on the difference between the taxes actually paid for agricultural use and what the taxes would have been if the property had been assessed as nonagricultural for these tax years. The important point, however, is that the court found this rollback proviso (Ill. Rev. Stat. 1973, ch. 120, par. 501a—3) was unequivocally not a reassessment because by statute the assessor has determined the value of the land under both the fair cash value and fair cash value used for farm purposes, and both assessments are listed

separately on each year's tax bill, so a reassessment of the property for previous tax years is not mandated. (Ill. Rev. Stat. 1973, ch. 120, pars. 501a—1, 501a—2.) *Hoffman v. Clark* (1977), 69 Ill. 2d 402.

■■ In the instant case, the plaintiffs' suggested remedy that the trial court should reduce the 1974 assessed values of that class of property which was higher assessed in 1973 is totally unacceptable to this court at this late date—three years after the taxes have been extended thereon. Our position is based on the chaotic overtones expressed previously which would naturally follow such a reassessment at this late date or even when requested in the trial court. Further, the problem of underassessment and equalization of taxes on property both in Lake County and throughout the State has been recognized by the supreme court in *Hamer v. Kirk* (1976), 65 Ill. 2d 211, 357 N.E.2d 506. In *Hamer*, the court determined a statute (Ill. Rev. Stat. 1975, ch. 120, par. 482(24)), which postponed the arrival of intracounty uniformity of assessment for taxing purposes until the 1977 assessment year, was constitutional and stated:

> "[T]his court has been more than tolerant, considering the deliberate refusal of State and local officials to comply with the law, in recognizing that a sudden change in assessment policy could lead to chaotic conditions in tax collection procedures. The legislation under attack here appears designed to eliminate a part of the problems noted in earlier opinions, and to promote compliance with article IX, section 4, of the Constitution with as little local disruption as possible." 65 Ill. 2d 211, 219.

In light of the supreme court's longstanding forbearance in this matter, we feel it would be counterdestructive to the measures taken both by the legislature and the courts to order an adjustment in the assessment of the 1974 taxes at this date. We compliment the perseverance of the plaintiffs and acknowledge the great service they have done to promote the general equalization of taxes on property throughout the State and Lake County in the last decade.

The plaintiffs also contend that the trial court erred in denying plaintiffs a trial relative to the back tax years of 1967-72. It is unnecessary for this court to reach this issue in light of our determination that the plaintiffs would not be entitled to relief in any regard because of the tumultuous effect on our tax system of the various remedies suggested by the plaintiffs.

■■ The plaintiffs finally contend that they were deprived of their due process and equal protection rights, as well as a remedy, by the trial court's denial of their petition for summary judgment and injunctive relief and its holding that it had neither the statutory nor equitable powers to grant a reassessment for past tax years. This contention is entirely without

merit because even though there were disparities in the assessments for the past tax years, the trial court was clearly within its discretionary powers to deny the plaintiffs' requested relief where such an order would create confusion and disorder in the public service and where the Department no longer had the statutory power to order a reassessment for past tax years. (*People ex rel. Maro v. Board of Auditors* (1971), 48 Ill. 2d 202, 268 N.E.2d 424.) In addition, the trial court properly exercised a reluctance to grant equitable relief in this tax matter where such relief would cause untold hardship and utter tumult to the taxing bodies, public officials and the general public. (*Vermilion County Good Government League, Inc. v. Smith* (1965), 64 Ill. App. 2d 270, 211 N.E.2d 391.) We trust that the plaintiffs will continue their admirable pursuit of the statutorily mandated assessment of property for future tax years, but we believe their suggested remedies are inappropriate at this time.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.