(No. 53556.—

PROVISO TOWNSHIP HIGH SCHOOL DISTRICT NO. 209 *et al.,* Appellees and Cross-Appellants, v. THOMAS C. HYNES, Assessor, *et al.,* Appellants and Cross-Appellees.

*Opinion filed November 13, 1980.*

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, and Mark V. Chester and Ronald P. Stake, Assistant State's Attorneys, of counsel), for appellants.

Stewart H. Diamond and John B. Murphy, of Ancel, Glink, Diamond & Murphy, P.C. and John H. Hilbert, all of Chicago, for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

The subject of this appeal is the validity under article IX, section 6, of the Illinois Constitution of two recently enacted provisions of the Revenue Act of 1939 which grant exemptions from real estate taxes: section 19.23—1a, as amended and effective January 31, 1980 (Pub. Act 81—1223), referred to hereafter as the "annual homestead exemption," and section 19.23—4, which was enacted September 26, 1979, and became effective July 1, 1980 (Ill. Rev. Stat. 1979, ch. 120, par. 500.23—4), referred to hereafter as the "homestead improvement exemption."

Plaintiff Proviso Township High School District No. 209 filed a class action in the circuit court of Cook County against the defendants Thomas C. Hynes, Edward J. Rosewell, and Stanley J. Kusper, who are respectively the assessor, the treasurer and *ex officio* collector, and the clerk of Cook County, seeking a declaration that the provision for the homestead-improvement exemption was unconstitutional and that the provision for the annual homestead exemption was unconstitutional as applied in Cook County.

The circuit court rendered a judgment adverse to the

defendants. They brought an appeal under Rule 302(a) (73 Ill. 2d R. 302(a)), and the plaintiffs cross-appealed from a portion of the judgment.

Section 19.23—1a, the annual homestead exemption, is applicable to real estate taxes both for 1978 and 1979, but only the taxes for the latter year are involved in this proceeding. On August 4 we entered an order staying the judgment of the circuit court pending final determination of this appeal, and authorizing the defendants to collect the second installment of the real estate taxes for 1979 on the same basis that was used for the 1978 taxes, subject to any later adjustment which might be required if our decision should be in favor of the plaintiffs.

The complaint alleges that the named plaintiff receives a portion of the proceeds of real property taxes collected in Cook County. The plaintiff filed its action individually and on behalf of all other governmental bodies in Cook County which are similarly situated. The circuit court certified a class of all school districts in the county, and allowed 34 of these to be made additional parties plaintiff, but the court declined to include other taxing bodies in the class, since there was no record that the latter had been given notice of the action. While there may be a question as to the plaintiff's standing to maintain this action, the defendants have not raised it, and we elect to consider the case on its merits.

We turn first to the annual homestead exemption provision, section 19.23—1a, which is described as follows:

"An annual homestead exemption limited, except as hereinafter provided with relation to cooperatives, to a reduction in the equalized assessed value of homestead property equal to the increase in such value for 1978 and subsequent years above the equalized assessed value of such property for 1977, up to a maximum of $1,500 *for 1978 and $3,000 for 1979 and subsequent years.*

'Homestead property' shall include residential property that is occupied by the owner or owners thereof as his or

their principal dwelling place *or, in counties where real property is classified for purposes of taxation in accordance with Section 4 of Article IX of the Constitution, residential properties classified in the lowest assessment classification.* In the case of land improved with an apartment building owned and operated as a cooperative, the maximum reduction from the equalized assessed value shall be limited to the increase in such value for 1978 and subsequent years above the equalized assessed value of such property for 1977, up to a maximum of $1,500 *for 1978 and $3,000 for 1979 and subsequent years,* multiplied by the number of apartments occupied by a person or persons who is liable, by contract with the owner or owners of record, for paying real estate taxes on the property and is an owner of record of a legal or equitable interest in the cooperative apartment building, other than a leasehold interest.

Where married persons maintain and reside in separate residences qualifying as homestead property under this Section, each residence shall receive 50% of the total reduction in equalized assessed valuation provided by this Section.

In lieu of procedures for exemptions required elsewhere in this Act, the assessor, county assessor, supervisor of assessments or board of assessors may determine the eligibility of residential property to receive the homestead exemption provided by this Section by application, visual inspection, questionnaire or other reasonable methods. Such determination shall be made in accordance with guidelines established by the Department of *Revenue.*" Pub. Act. 81—1223.

The language italicized in the above quotation was added by the amendment of 1980.

Section 19.23—1a was enacted in 1978. (1978 Ill. Laws 1969.) The definition in the second paragraph of the term homestead then read: " 'Homestead property' shall include property that is owned and used exclusively for a residential purpose." An amendment in the following year (1979 Ill. Laws 1562) replaced that definition with the following: " 'Homestead property' shall include residential property that is occupied by the owner or owners thereof

as his or their principal dwelling place." This amendment also added the third paragraph of the section.

Cook County has a population of more than 200,000, and is thus empowered by article IX, section 4(b), of the Constitution to classify real property for purposes of taxation. It was stipulated by the parties that an ordinance of Cook County presently in effect divides real property into six assessment classifications, in each of which property is to be assessed at a specified percentage of market value, ranging from 16% to 40%.

One of the two classes which fall in the 16% bracket is class 2, which includes "real estate used as a farm, or real estate used for residential purposes when improved with a house, an apartment building of not more than six living units, or residential condominium, a residential co-operative or a government-subsidized housing project if required by statute to be assessed in the lowest assessment category."

It appears from the stipulation that the assessor has established some 99 subclasses within class 2 based on the physical characteristics of improvements on property. These subclasses are not mentioned in the county ordinance, but are apparently an administrative creation, and the stipulation does not disclose the purpose for which they were devised. It was stipulated that the assessor will only consider eligible for the annual homestead exemption property which falls within certain of these subclasses, 17 in number, which are enumerated in the stipulation. The subclasses which will not be considered eligible are listed in the defendants' answer. These include farm buildings not used as residences, such as silos.

It was also stipulated that the defendants do not maintain records which indicate the ownership and occupancy of all units or parcels within the county, that the assessor will not endeavor to ascertain occupancy by requiring an application or by inspection, questionnaire, or

otherwise, and that he will make his determination of eligibility without regard to whether the owner resides on the premises or whether the premises are his principal dwelling place.

Article IX, section 6, of the Illinois Constitution of 1970 provides:

> "The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes. The General Assembly by law may grant homestead exemptions or rent credits."

The circuit court held that the term "homestead," as used in this constitutional provision, means residential property occupied by the owner or owners thereof as his or their principal dwelling place, and that a homestead exemption must therefore be limited to such property. Since the first clause of the second paragraph of section 19.23—1a employs that formula it would thus be valid standing alone. The court concluded that another definition of homestead that this paragraph provides, seemingly as an alternative, for counties which classify property would be unconstitutional unless subject to the same limitation. The court accordingly held that the exemptions which the defendants propose to grant would be valid if, but only if, they were confined to property included in the 17 eligible subclasses of class 2, and only if the defendants "should have information upon which to establish that the owner or owners reside therein as his or their principal dwelling place."

The defendants take the view that the legislature may grant a homestead exemption to all real property on which there are improvements used only for residential purposes. The plaintiffs, on the other hand, contend that a homestead exemption must be limited to a single-family dwelling unit occupied by the owner claiming the exemp-

tion.

The estate of homestead in real property (Ill. Rev. Stat. 1979, ch. 52, par. 1 *et seq.*) has existed by statute in Illinois since 1851 (1851 Ill. Laws 25) and was in effect when the Illinois Constitution of 1970 was adopted and ratified (Ill. Rev. Stat. 1969, ch. 52, par. 1 *et seq.*). Although the amount of the exemption has increased over the years, the significant provisions otherwise remained the same.

The act of 1851 defined a homestead as "the lot of ground and the buildings thereon occupied as a residence, and owned by the debtor, being a householder, and having a family, to the value of one thousand dollars." (1851 Ill. Laws 25.) By an amendatory act of 1873 the homestead estate was enlarged to include land occupied under a lease. (1873 Ill. Laws 99.) That the person claiming the homestead exemption must occupy the property as a residence, however, has remained a necessary ingredient in the successor statutes to the act of 1851 (See 1871-72 Ill. Laws 478; 1873 Ill. Laws 99), and that requirement has been referred to frequently in the decisions of this court. *Tourville v. Pierson* (1866), 39 Ill. 447; *Sever v. Lyons* (1897), 170 Ill. 395; *Barto v. Kellogg* (1919), 289 Ill. 528; *cf. Rock Island Bank & Trust Co. v. Lamont* (1935), 361 Ill. 432, 434-35; *Morris Investment Co. v. Skeldon* (1948), 399 Ill. 506, 509; Note, *The Illinois Homestead Exemption,* 1950 Ill. L. F. 99, 105.

The Constitution of 1870, although directing that the General Assembly should pass liberal homestead and exemption laws (Ill. Const. 1870, art. IV, sec. 32), did not include homesteads among the property which the legislature might exempt from taxation (Ill. Const. 1870, art. IX, sec. 3).

In 1969 the General Assembly enacted an amendment to the Revenue Act granting a homestead exemption to real property owned by a person aged 65 years or older

and occupied by him as a residence. (1969 Ill. Laws 4118.) In May 1971, that act was declared unconstitutional in *Hoffman v. Lehnhausen* (1971), 48 Ill. 2d 323. The court rejected a contention that the exemption was authorized by article IV, section 32, since the homestead exemption under Illinois law was an exemption from a forced sale only, not from taxes. (48 Ill. 2d 323, 327.) The provision in question was repealed, and a successor statute enacted shortly after the Constitution of 1970 became effective was upheld in *Doran v. Cullerton* (1972), 51 Ill. 2d 553.

The act before the court in *Doran* (Ill. Rev. Stat. 1971, ch. 120, par. 500.23–1) also limited the exemption to real property occupied as a residence. That decision is thus not dispositive of the case in hand.

Logic suggests that in using the term "homestead" to describe the tax exemption which it was authorizing the legislature to provide, the drafters of article IX, section 6, would draw on the meaning of that term as it was embodied in the statutes on that subject. A critical element of the statutory homestead exemption was occupancy of the property by the person claiming the exemption. As we have seen, the statutory homestead exemption was directed only against the forced sale of the property to meet the debts of the homesteader. The purpose of the new constitutional provision was to extend that exemption to real estate taxes. In the case of a person occupying the property under a lease, the tax exemption could be provided in the form of "rent credits," where the real estate tax had been made proportionately payable by the tenant. That situation is of course not addressed by the present statute. In the more usual case the taxpayer is the owner, and it is he who must be an occupant of the premises.

We find nothing in the Proceedings of the Sixth Illinois Constitutional Convention (hereafter referred to as Proceedings) which points in a different direction.

Article IX, section 6, was submitted to the convention by the Committee on Revenue and Finance. With respect to the last sentence of that section (which at that point was a separate paragraph), the report of the committee stated:

> "The last paragraph permits the General Assembly to exempt all or part of the value of property occupied as a residence by the owner and provides that credits may be granted to those individuals who pay property taxes indirectly through rent payments." 7 Proceedings 2150.

In elaborating on this description the report stated further:

> "The final sentence permitting the granting of homestead exemptions or rent credits represents a major change. The Committee is acutely aware of the hardships which the payment of property taxes on residential property can cause—especially when the homeowner, by reason of retirement or a change in family circumstance, has a greatly reduced income.
>
> Many states have moved to meet this problem by providing for the exemption from taxation of the assessed value of owner-occupied homes. In some cases, the exemptions are available to all those who occupy a homestead. In other cases, benefits are limited to those who are elderly or in need. Unfortunately, this kind of exemption provides no relief to renters who directly pay no real estate taxes but whose rent payments are higher by reason of property taxes paid by the owners of property which they occupy. The Committee proposal will permit the General Assembly to develop a system whereby credits for real estate tax payments are passed through to the renter so that he may receive a benefit comparable to the homeowner." 7 Proceedings 2158.

The only dissent expressed was by Delegate Ray H. Garrison (7 Proceedings 2160). He did not question that the committee proposal was limited to occupants of the property. His suggestion, on the contrary, was that the exemption be further limited by confining it to elderly persons of limited means.

In presenting the proposed language of article IX, section 6, to the floor of the convention, Delegate Durr described it in the following words:

"The second paragraph of this section is really the area that is new, and your main concern, perhaps, might be whether we want to permit the General Assembly to grant homestead exemptions and rent credits as they see fit, or whether you would want to limit it in some way, as Delegate Garrison would, assuming that you would want it to permit it to do so at all.

The rent credits [are] intended to permit the General Assembly to extend tax relief to people who rent land—or residences—and whose rent, about a fourth to a third of it, according to what we heard, is to pay the real estate taxes that are—to which the owner of that residence they are renting is subjected." 3 Proceedings 1918.

In response to a question by Delegate Lewis as to why homestead exemptions could not be granted under the 1870 Constitution, Delegate Scott made the following observations:

"MR. SCOTT: Mr. President and delegates, I would like to add just a little to why is it in there. We had some consternation in committee with the—with what the General Assembly did last year with the homestead exemption. As you well know, they passed a bill that provides a homestead *** exemption—it's been amended at the present session—to give a homestead exemption to anyone sixty-five years of age or older, having title to a residence and living in that residence.

Now in my own mind, I think it's unconstitutional; it violates uniformity. But the court will probably lean over backwards to hold it constitutional. But you see, that homestead exemption gives that exemption to the millionaire as well as maybe my father or your grandfather or someone like that that's trying to live on a fixed income, and he's sixty-five or older and the property taxes are squeezing him some, you see.

Now this, by the "may," would give the General Assembly the right, if it wants to, to pass the right kind of a homestead *** exemption like some eighteen states have, which—I am thinking, for instance, of a person sixty-five

or older with a certain fixed income. He might be living on a pension or his income is maybe $1,500 a year or something, and he's trying to stay in his home, be a good citizen, and pay taxes, and give him a little break." 3 Proceedings 1919.

Delegate Scott went on to point out that the committee had not deemed it advisable to limit the constitutional provision so as to authorize exemptions only for the elderly person of limited means. His remarks are significant in emphasizing that the committee's concern was not with persons or entities who owned residential property solely as an investment, but with owner-occupants who were threatened with the loss of their residence through high property taxes.

In considering the understanding of the meaning of the words used by the voters who adopted the constitution (*Client Follow-Up Co. v. Hynes* (1979), 75 Ill. 2d 208, 222), we note also the convention's explanation of the constitutional provision given to the voters prior to the referendum:

"The second sentence is new. It permits tax relief or tax credit *to people who own or rent their homes.* Such relief may be limited to the elderly or needy, or, at the discretion of the General Assembly, may be granted to everyone." (Emphasis added.) 7 Proceedings 2738.

Contrary to the defendants' contention, the statement does not support their thesis that the exemption may be granted to any owner of residential property without regard to his occupancy of the premises. Although not employing the word "occupy," in coupling people who own their homes with those who rent them, the statement, we believe, inferentially excludes one whose relationship to a residential structure is only that of an investor.

In connection with the question under consideration, the plaintiffs assert that a homestead exemption cannot be validly granted where the owner is a corporation, since the latter cannot "reside" in a building. We agree that the

owner-occupant must be a natural person. We point out, however, that the beneficial owner of property held under a land trust is liable for real estate taxes on the property (*People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479), and if the beneficiary is a natural person residing on the premises he would qualify for the exemption even if the trustee were a corporation.

The plaintiffs, by their cross-appeal, object to the judgment of the circuit court because it would permit a homestead exemption to be granted to the owner of an apartment building containing as many as six dwelling units so long as he resides in one of them, the others being occupied by his lessees. The plaintiffs take the position that such a situation is incompatible with the homestead concept, and that the exemption from taxes should be confined to owners of single-family residences.

Implicit in the plaintiffs' contention is the proposition that the owner's exemption should apply only to that part of his property which he occupies as a residence. So far as the exemption under the homestead statute is concerned, the plaintiffs cite no authority in support of their position, and we note that there is authority to the contrary. Thus, where an owner resides on one portion of a single lot, the entire lot will qualify for the exemption even if the remainder is leased to another person. *Hubbell v. Canady* (1871), 58 Ill. 425, 427; *Stevens v. Hollingsworth* (1874), 74 Ill. 202, 205-08; *Sever v. Lyons* (1897), 170 Ill. 395, 398.

So far as the exemption from real estate taxes authorized by article IX, section 6, is concerned, in any event, a multiunit building is taxed as a single structure, and the tax exemption, if one exists, necessarily runs to the owner as the taxpayer. The drafters of the constitutional provisions were well aware of this situation, but considered that any modification of it should be accomplished by legislation providing rent credits to the tenants, which is also

permitted under section 6. That this was the drafters' position is shown by the Report of the Committee on Revenue and Finance (7 Proceedings 2150, 2158). The plaintiffs' proposal that the owner be denied any exemption at all finds no support in the proceedings of the convention.

The plaintiffs also suggest that under some circumstances the allowance of an exemption to the owner-occupant of an apartment building might discriminate against an owner of a single-family home. The plaintiffs have not shown, however, how such a discrimination could or would arise.

There remains for consideration the validity of the homestead-improvement exemption act, section 19.23—4 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 500.23—4). For present purposes it will be sufficient to set out the first paragraph, which is as follows:

> "Beginning on January 1, 1980, in all counties, there is allowed a homestead improvement exemption pursuant to Article IX, Section 6 of the 1970 Constitution, limited to a maximum of up to $15,000 in actual value of improvements per dwelling unit. Homestead property for purposes of this exemption shall include all real property on which residential buildings consisting of less than 55 dwelling units are situated and which is owned and used primarily for residential purpose by either the owner or other persons who rent or lease such property or portions thereof. Real property on which single family residences are situated and which is eligible for the exemption provided in Sections 19.23—2 and 19.23—3 of the 'Revenue Act of 1939' shall not be eligible for an exemption under this Section. The exemption provided for in this Section shall last for a period of 4 years from the date the improvements are completed."

The circuit court summarily held this act unconstitutional under the exemption provisions of article IX, section 6, of the Constitution, and we concur in that determination. While there are other aspects of the Act which

may raise constitutional questions, it is enough to point out that the Act does not require that the owner be a natural person who resides in the building. In their brief the defendants support the Act solely on the ground that it is a form of rent credit. The Act, however, makes no provision whatever for rent credits, and the entire benefit of the exemption, which could reach the sum of $3,600,000 for a single building, is conferred upon the owner.

To summarize, we hold that no annual homestead exemption from taxes on real property may be granted by the defendants pursuant to section 19.23—1a unless the property is occupied by the owner or owners thereof as his or their principal dwelling place, and we affirm the judgments of the circuit court that as applied in Cook County by the defendants without that requirement the section would be invalid. We also affirm that part of the judgment below which holds that section 19.23—4, which relates to the housing-improvement exemption, is unconstitutional on its face.

The judgment of the circuit court also requires that before issuing tax bills containing the homestead exemption "the defendants have information upon which to establish that the owner or owners reside therein as his or their principal dwelling place." The last paragraph of section 19.23—1a authorizes a number of ways in which eligibility to receive the exemption may be determined, but provides that the determination be made in accordance with guidelines established by the Department of Revenue. The parties advise us that the Department has not yet established any such guidelines. Until the Department has done so, the defendants may use any of the methods authorized by the section to ascertain whether property is owner-occupied. With respect to taxes for 1980 and later years the judgment of the circuit court is affirmed as modified herein.

Pursuant to our interim order of August 4, referred to previously, bills for the second installment of taxes for the year 1979 allowing the exemption without regard to owner-occupancy have already been sent out, and some taxpayers allowed the exemption will have paid a lesser amount in taxes than that for which they would be liable without the exemption. In those cases in which the defendants seek to bill any taxpayers for a deficiency, no bill should be sent out unless the defendants have information upon which to establish that the owner or owners do not reside on the property in question as his or their principal dwelling place.

The defendants represent that there are some 1 million parcels potentially eligible for the homestead exemption, and that they do not maintain records which show the ownership and occupancy of all these parcels. To expedite the collection of taxes by the defendants, and in the interest of sound judicial administration, we remand this cause to the circuit court for such further proceedings and orders as may be necessary to implement our decision with regard to the billing and collection of taxes for both the years 1979 and 1980.

*Affirmed as modified;*
*cause remanded,*
*with directions.*