PROVISO TOWNSHIP HIGH SCHOOL DISTRICT NO. 209 *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* THOMAS C. HYNES, Assessor of Cook County, *et al.*, Defendants-Appellants and Cross-Appellees.

First District (1st Division)   No. 81—1975

Opinion filed November 8, 1982.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Susan Condon, and Ronald P. Stake, Assistant State's Attorneys, of counsel), for appellants.

Stewart H. Diamond, of Ancel, Glink, Diamond, Murphy & Cope, P. C., and John H. Hilbert, both of Chicago, for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:
This is an appeal by defendants, Thomas C. Hynes, Edward J. Ro-

sewell and Stanley T. Kusper, Jr., respectively the assessor, treasurer and collector, and clerk of Cook County, Illinois, and a cross-appeal by plaintiffs, Proviso Township High School District No. 209 and other school districts of Cook County, Illinois, from an order entered by the circuit court of Cook County upon remand by the Supreme Court of Illinois.

In April 1980, plaintiff school districts brought suit for declaratory and other relief, challenging the constitutionality of the homestead exemption created by section 19.23—1a of the Revenue Act of 1939, as amended (Ill. Rev. Stat. 1981, ch. 120, par. 500.23—1a). That exemption, also referred to as the "Hynes exemption" or the general homestead exemption, was originally applied to 1978 real estate taxes. Plaintiffs' suit asked no relief for 1978. Plaintiffs sought to enjoin defendants from applying the exemption to bills for the second installment of the 1979 real estate taxes, which were due in July 1980.

The trial court heard the case on the pleadings, stipulation and evidence depositions. The facts were largely uncontested. It was undisputed that for the 1978 real estate taxes the defendant taxing officials had granted the homestead exemption to all residential properties in the lowest assessment classification, without regard to whether the owner occupied the property as his principal dwelling place. It was further stipulated that the defendants, in accordance with the statute, intended to administer the homestead exemption for the 1979 taxes on the same basis as used in 1978. The parties also stipulated that the defendants do not maintain records which indicate the ownership or occupancy of all units or parcels within the county.

On June 19, 1980, the trial court held the homestead exemption unconstitutional insofar as it was not restricted to owner-occupied residential property. An appeal was taken by defendants to the supreme court.

After oral argument in that court and pending the issuance of its opinion, that court, on August 4, 1980, ordered:

"2. The defendants are authorized to commence the extension, billing and collection of the second installments of the Real Estate Taxes for Tax Year 1979, and to administer the General Homestead Exemption provided for by Sec. 19.23—1a of the Revenue Act of 1939, as amended, according to the procedures used for Tax Year 1978, without gathering information indicating the ownership or occupancy of the residential properties which will receive the exemption.

3. The Court retains complete jurisdiction of this cause, and in the event the position of the plaintiffs is ultimately sustained

the Court will fashion appropriate relief."

Pursuant to that order, defendants sent out the bills for the second installment of the 1979 real estate taxes, allowing the general homestead exemption as they had in 1978.

On November 13, 1980, the supreme court handed down its opinion. It held that no annual homestead exemption could be granted by defendants unless the property was occupied by the owner as his principal dwelling place and found that the exemption had been improperly granted insofar as that requirement was not met. *Proviso Township High School District No. 209 v. Hynes* (1980), 84 Ill. 2d 229, 417 N.E.2d 1290.

The court then said (84 Ill. 2d 229, 243):

> "The judgment of the circuit court also requires that before issuing tax bills containing the homestead exemption 'the defendants have information upon which to establish that the owner or owners reside therein as his or their principal dwelling place.' The last paragraph of section 19.23—1a authorizes a number of ways in which eligibility to receive the exemption may be determined, but provides that the determination be made in accordance with guidelines established by the Department of Revenue. The parties advise us that the Department has not yet established any such guidelines. Until the Department has done so, the defendants may use any of the methods authorized by the section to ascertain whether property is owner-occupied."

As to the ways to determine eligibility, the last paragraph of section 19.23—1a states:

> "In lieu of procedures for exemptions required elsewhere in this Act, the assessor, county assessor, supervisor of assessments or board of assessors may determine the eligibility of residential property to receive the homestead exemption provided by this Section by application, visual inspection, questionnaire or other reasonable methods. Such determination shall be made in accordance with guidelines established by the Department of Revenue." (Ill. Rev. Stat. 1981, ch. 120, par. 500.23—1a.)

The court then concluded (84 Ill. 2d 229, 244):

> "Pursuant to our interim order of August 4, referred to previously, bills for the second installment of taxes for the year 1979 allowing the exemption without regard to owner-occupancy have already been sent out, and some taxpayers allowed the exemption will have paid a lesser amount in taxes than that

for which they would be liable without the exemption. In those cases in which the defendants seek to bill any taxpayers for a deficiency, no bill should be sent out unless the defendants have information upon which to establish that the owner or owners do not reside on the property in question as his or their principal dwelling place.

The defendants represent that there are some 1 million parcels potentially eligible for the homestead exemption, and that they do not maintain records which show the ownership and occupancy of all these parcels. To expedite the collection of taxes by the defendants, and in the interest of sound judicial administration, we remand this cause to the circuit court for such further proceedings and orders as may be necessary to implement our decision with regard to the billing and collection of taxes for both the years 1979 and 1980."

The court's mandate issued the same date remanded the cause to the circuit court of Cook County "for such further proceedings and orders as may be necessary to implement our decision with regard to the billing and collection of taxes for both the years 1979 and 1980."

Plaintiffs' subsequent motion for clarification of the opinion as to its ruling for 1979 was denied.

On the remand, the defendants agreed to, and did, with reference to the year 1980, send out over one million computer-read questionnaires to the necessary group of taxpayers asking:

"1) Did you reside on this property as of Jan. 1, 1980?

2) Did you own the property as of Jan. 1, 1980?"

The responses to this questionnaire were used to grant the "Hynes exemption" to all those who answered both questions in the affirmative.

The sole issue before the trial court on the remand was: what should be done concerning the 1979 tax year? Plaintiffs asked that defendants take affirmative action to identify those taxpayers who had improperly received the homestead exemption for 1979 and retroactively to revoke the exemption by sending a deficiency tax bill to those taxpayers. The method suggested by plaintiffs to do this was to send application-questionnaires to all taxpayers, and to send bills to those taxpayers who did not respond indicating they were entitled to the exemption. Plaintiffs also asked that the deficiencies be computed on the basis of the original 1979 tax rates.

Defendants contended that the supreme court's mandate gave the trial court discretion regarding possible action for the 1979 tax year. They also pointed to evidence to show their lack of information re-

garding the ownership or occupancy of residential real estate. Defendants also argued that the chaotic effects of retroactive billing and prior case law supported denial for retroactive relief and asked for "finality" for the 1979 tax year.

The trial court held a hearing to take additional evidence on the issue of what information was possessed by defendants regarding the ownership and occupancy of residential property. Included in the evidence were the affidavits of the chief deputy assessor, the deputy county treasurer and ex-officio county collector and the deputy county clerk.

The chief deputy assessor stated that his office has only records showing ownership and occupancy by senior citizens who were granted a senior citizens homestead exemption. Those parcels number approximately 167,000. There are no records showing the nonownership or nonoccupancy of those residential parcels where that exemption was denied. The deputy county treasurer and ex-officio county collector stated that his office has no records indicating ownership and occupancy of residential properties; he knows only of the assessor's records as to senior citizens. Similarly, the deputy county clerk stated that his office has no records showing ownership or occupancy of residential properties; he knows only of the assessor's records as to senior citizens. Records kept by his office as to voter registration (which do not cover all of Cook County) do not show that any registrant from a location is the owner or occupant of that location.

On February 25, 1981, the trial court by order permitted the county collector to file and perfect his annual application for order of judgment and sale with respect to the 1979 taxes. That order also directed that any subsequent corrective action taken by the court "whether by way of separate deficiency tax bills or as part of tax bills for a subsequent year or by any other means" will be treated as a separate item and dealt with in a tax year subsequent to the 1979 tax year. The court also ordered that a copy of his order, which would alert property owners of the continuing pendency of the homestead exemption case, was to be "appended as an exhibit to said Annual Application for Order of Judgment and Sale for 1979" taxes.

On June 4, 1981, the trial court issued an oral ruling and, on July 7, 1981, a written order. That order denied both plaintiffs' request for affirmative relief and defendants' request that it declare the 1979 taxes final as collected. The order provided:

"1) The defendants are directed not to send questionnaires or exemption applications to taxpayers or to portions of taxpayers as requested by the plaintiffs and for the purpose of determin-

ing whether Class 2 residential real estate in Cook County was not resided in by the owner or owners thereof as a principal dwelling place in respect to the 1979 tax year.

2) The defendants' request that the Court authorize them to do nothing more in respect to the erroneously allowed General Homestead Exemptions for the 1979 tax year is denied.

3) The defendants are directed to send deficiency bills to taxpayers in respect to General Homestead Exemptions erroneously allowed for the 1979 tax year only where they have information upon which to establish that the owner or owners did not reside on the property in question as his or their principal dwelling place in 1979.

4) Defendants shall make available to plaintiffs' attorneys, consultants and agents, upon reasonable requests from time to time, their records for inspection and copying, including but not limited to any computerized list of properties in possession of defendants or such lesser portion thereof as may be requested by plaintiffs, for which a General Homestead Exemption was granted for 1979, containing the names of the taxpayers of record, the Permanent Index Number of each such property, the respective subclass to which it is assigned, and the amount of taxes and equalized assessments exempted for 1979, and similar information summaries and records received or derived from the 1980 applications sent out pursuant to orders of this Court, and such other records which may assist or be utilized in determining eligibility for the 1979 General Homestead Exemption.

5) Any and all tax bills prepared according to this Order shall be calculated using the tax rates, respectively, previously used in computing the 1979 tax bill for said property. Any and all such tax bills prepared according to this Order shall be sent independently of the second installment of the 1980 real estate tax bills. Any and all moneys collected as a result of subsequent billings for the 1979 General Homestead Exemptions improperly granted under the Supreme Court's Opinion in this matter shall be deposited, pending final distribution, in a special interest-bearing fund to be held pursuant to further order of this Court.

6) The defendants shall, within 120 days after sending out any tax bills which contain 1979 deficiency taxes for improperly-granted 1979 General Homestead Exemptions, file an accounting with this Court of any moneys collected as a result of

subsequent billings for General Homestead Exemptions improperly granted in 1979, serving a copy upon the attorneys for plaintiffs.

* * *

8) The Court shall retain jurisdiction over the parties, and over this matter, for the sole purpose of (a) deciding questions that may or may not arise as to the sufficiency of information to bill and collect the said taxes uncollected because of the erroneously granted 1979 General Homestead Exemptions; (b) controlling the special fund, if any, to be created pursuant to this Order, or subsequent orders of this Court, and determining any and all distributions and disbursements to be made therefrom; (c) implementing this Court's orders heretofore and hereafter entered pursuant to the mandate of the Supreme Court of Illinois; and (d) hearing and deciding all applications from plaintiffs, their attorneys and consultants for the award of fees and expenses incurred as a result of this litigation."

Defendants appeal from those portions of the order which denied finality to the 1979 taxes, arguing that the trial court had authority to declare the 1979 tax year final and that public policy mandates such action and the consequent denial of retroactive relief with respect to prior tax years. Plaintiffs cross-appeal from the denial of the relief they sought and ask the court for further additional relief as to the 1979 taxes. They seek a modification of the trial court's order so that defendants will be required to take some affirmative action with respect to the billing and collection of 1979 taxes still owing due to the erroneously granted exemptions.

While we do not disagree with defendants' assertion of the trial court's authority to grant, under a general remand, the relief they seek, if appropriate (*Gieseke v. Hardward Dealers Mutual Fire Insurance Co.* (1965), 61 Ill. App. 2d 119, 208 N.E.2d 900), we are constrained by the supreme court's specific mandate in this case, which remanded the cause to the circuit court "for such further proceedings and orders as may be necessary to implement our decision with regard to the *billing* and *collection* of taxes for both the years *1979* and *1980*." (Emphasis supplied.) This remandment, as stated in the opinion, was "[t]o expedite the collection of taxes by the defendants, and in the interest of sound judicial administration." The only limitation on the power to bill the 1979 taxes was clearly stated by the supreme court (84 Ill. 2d 229, 244):

"In those cases in which the defendants seek to bill any taxpayers for a deficiency, no bill should be sent out unless the

defendants have information upon which to establish that the owner or owners do not reside on the property in question as his or their principal dwelling place."

Pursuant to the court's mandate, we must deny the declaratory relief sought by defendants and enter a modification of the trial court's order as sought by plaintiffs. Such steps are necessary if plaintiffs are to receive the relief clearly contemplated by the supreme court. Given the procedural history of the instant case, we find nothing in the law or the public policy of this State which would dictate an opposite conclusion.

Defendants cite cases which they claim necessitate, because of the great practical difficulties involved, that the 1979 taxes be declared final. We are not unmindful of the court's statement in *Hamer v. Kirk* (1976), 65 Ill. 2d 211, 357 N.E.2d 506, "a sudden change in assessment policy could lead to chaotic conditions in tax collection procedures" (65 Ill. 2d 211, 219) and of similar views expressed in *Harte v. Lehnhausen* (1975), 60 Ill. 2d 542, 328 N.E.2d 543, *cert. denied* (1975), 423 U.S. 912, 46 L. Ed. 2d 141, 96 S. Ct. 216, *Hamer v. Mahin* (1970), 47 Ill. 2d 252, 265 N.E.2d 151, *People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 235 N.E.2d 589; see also *Hamer v. Kirk* (1978), 57 Ill. App. 3d 335, 373 N.E.2d 64, *appeal denied* (1978), 71 Ill. 2d 603.

Nor are we unmindful of the views expressed in *Board of Education v. Barrett* (1977), 67 Ill. 2d 11, 14-15, 364 N.E.2d 89, where the court said:

"We are not unsympathetic to the problems facing taxing bodies as a result of the failure of State and local assessing authorities to comply with statutory mandates and time schedules. (See *Hamer v. Kirk* (1976), 65 Ill. 2d 211; *Harte v. Lehnhausen* (1975), 60 Ill. 2d 542; *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400; *Hamer v. Mahin* (1970), 47 Ill. 2d 252; *People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360.) But we cannot agree that we would be justified in overruling soundly based decisions of long standing in order to uphold plaintiff's additional December levy. The process of assessing property for taxation and the levy and extension of taxes against that property is a complex one involving thousands of taxing bodies and the cooperation of numerous public officers. Delay at any stage of the process is likely to result in substantial added expenses in the form of extra employees or overtime pay required by county clerks and treasurers who receive late valuation statistics from assessing officials or delayed levy totals from taxing

bodies; and when the distribution of taxes is untimely, taxing bodies are burdened with the expense and interest of tax anticipation warrants essential to their continued operation. Were we somehow to sustain this tardy levy, we would simply add greater uncertainty and confusion in an already less than efficiently operating system."

The question, however, before both the trial court and this court is, in view of the supreme court's specific mandate, purely one of practicality.

Some of the cases cited by defendants are distinguishable because they involve only a single taxpayer, whereas here a great number are involved. All are inapplicable because no specific mandate from the supreme court was involved.

Section 222 of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 703), provides that where tax or assessment of property liable to taxation is prevented from being collected for any year or years by reason of any omission, erroneous proceedings or other cause, such tax or assessment may be added to the tax on such property for any subsequent year.

*Montgomery Ward Life Insurance Co. v. Department of Local Government Affairs* (1980), 89 Ill. App. 3d 292, 411 N.E.2d 973, *appeal denied* (1981), 82 Ill. 2d 585, involved, as does this case, an attempt to rely on an exemption previously allowed. There the insurance company-taxpayer brought an action to review the assessment of its capital stock by the Department of Local Government Affairs, challenging the inclusion of certain securities. The court found said securities were not exempt and held that the Department was not precluded from assessing them by the fact that its previously published standards, as set forth in the Illinois Property Tax Manual, had declared them exempt. In rejecting plaintiff's argument that the Department was precluded from taxing the securities, the court stated that the fact that the Department had erroneously included certain nonexempt property as exempt would not preclude a subsequent correction of the error and taxation of the property. 89 Ill. App. 3d 292, 302.

■ We find that the trial court correctly refused to grant defendants' request to make final the 1979 taxes. We affirm that portion of the order.

We now turn to the question of what relief would be appropriate to determine the residency and ownership of the properties so that deficiency bills may be sent to those taxpayers who were not owners and did not reside on the property as their principal dwelling place.

The record in the case before us shows that defendants have in

their possession or available to them records which show (a) the alphabetical listings of taxpayers in Cook County keyed to the permanent index numbers, (b) the addresses and classification of properties with dates of transfer, and (c) voter and registration lists. The record on appeal, however, also shows that even if those records were all keyed together they still would not show the ownership or the residency of the taxpayers. Nor do the records available to defendants disclose whether duplicate names of taxpayers refer to the same individual.

■ Based on the record before us, we are of the opinion that the appropriate manner in which to carry out the supreme court's mandate to ascertain those taxpayers who were not entitled to the general homestead exemption and to bill them for the balance due on the 1979 taxes is to utilize the procedure recognized by the supreme court as available under section 19.23—1a and send out a questionnaire for the year 1979 in the same form as that used in connection with the exemption for the 1980 taxes. This questionnaire should ask as to the residency and ownership of the property on January 1, 1979.

The questionnaire should not be sent: (1) to the senior citizens to whom a senior citizen's exemption has been granted; (2) to those taxpayers who, based on the 1980 questionnaire, received a general (or Hynes) exemption for 1980; or (3) as to those parcels as to which the records available to defendants show them to be vacant.

The questionnaire should be sent to: (1) those taxpayers who, from the 1980 questionnaire, were denied an exemption for 1980; (2) those taxpayers who were denied a senior citizen's exemption in 1979; (3) those taxpayers who are corporations, trustees or partnerships; (4) all taxpayers whose names are listed as taxpayers as to more than one parcel; and (5) any other taxpayers concerning whom plaintiffs, or others, have supplied to defendants evidence that those taxpayers are either not owners of or residents at a specified parcel.

Defendants should be given a reasonable time by the trial court to send out and to process the questionnaires which are returned. Bills should be sent only to those who by their answers admit that they are not entitled to the exemption previously granted for 1979. After defendants have ascertained from the questionnaires those who are to be billed for additional taxes for 1979, the trial court should decide, after a hearing, whether those bills should be sent out separately or whether the amount due on the 1979 taxes should be added to the tax bills for a subsequent year where the taxpayer for 1979 is the same as that for the subsequent year. The tax rates used should be those used for 1979.

The trial court should also order, as it did in its July 7, 1981, or-

der, that all funds collected be kept in a separate interest-bearing account which it shall administer.

While this procedure will not eliminate all of the concerns expressed by the courts in the *Hamer* and other cases, we feel that it will minimize them to a great extent so that at least a portion of the taxes which should have been collected are available as revenue for the plaintiffs.

Referring specifically to the order appealed from:

Paragraph 1 is reversed. On the contrary, this court specifically directs the sending out of questionnaires as above stated.

Paragraphs 2, 3, 4 and 5 are affirmed.

Paragraph 6 is modified by eliminating the 120-days provision so that the trial court may upon remand set any time limit it then deems necessary for an accounting of any moneys collected.

Paragraph 8 is modified so that the trial court shall retain jurisdiction, in addition to the matters mentioned therein, to administer the process of collections of additional 1979 taxes until final accomplishment thereof, specifically including the above statements by this court concerning the transmission and processing of questionnaires.

The order of the circuit court of Cook County is affirmed in part, reversed in part, modified in part and the cause is remanded for further proceedings consistent with the views expressed herein.

Affirmed in part, reversed in part, modified in part and remanded with directions.

GOLDBERG and McGLOON, JJ., concur.